## ALFRED W. CARR & others vs. ELIZABETH A. RILEY & another.

Suffolk.    January 9, 1908. — February 29, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Equitable Restrictions.    Deed,* Construction.    *Words,* "Mercantile."

In an elaborate and carefully drawn deed of a house lot in a residential portion of a city, which contains many restrictions, the restriction, that "no buildings other than dwelling houses (which word shall include club houses), with the usual outbuildings appurtenant thereto, shall be erected, placed or used upon the said land," does not mean that the buildings shall be used only for dwelling houses, but means that, with the exception of club houses, no buildings other than dwelling houses shall be used for any purpose, and the dwelling houses when erected may be used for any lawful purpose which is not prohibited by some other provision of the deed.

A restriction in a deed, that no building erected on the land conveyed "shall be used as an apartment house, family hotel or flats, or in design or construction be fitted for occupancy by more than one family," is not violated by fitting up as an operating room for a hospital one of the rooms of a dwelling house, which in internal structure still is fitted for occupancy by only one family.

The conducting by two women physicians of a private hospital for surgical and medical cases and as a lying-in hospital under a proper license, principally for the treatment of cases brought there by other physicians, is not a mercantile use of the house in which the hospital is carried on, within the prohibition of a restriction in a deed of the land, in a residential portion of a city, that no building erected thereon "shall be used for any manufacturing, mercantile or mechanical purposes."

A deed of a house lot on a city street, containing many restrictions imposed by a land company for the purpose of making the territory a fine residential section of the city, being much more elaborate than an ordinary deed of real estate and bearing on its face strong evidence that great care was taken in preparing the form, contained among others the following restrictions : " 1st. No buildings other than dwelling houses (which word shall include club houses), with the usual outbuildings appurtenant thereto, shall be erected, placed or used upon the said land.    No stable of any kind, private or otherwise, shall be erected or maintained on any portion of said land.    No building erected on this land shall be used as an apartment house, family hotel or flats, or in design or construction be fitted for occupancy by more than one family.    2d.    No building erected on said land shall be used for any manufacturing, mercantile, or mechanical purposes."    A woman claiming under this deed lived with her sister in a dwelling house erected on the land, the internal structure of which was fitted for occupancy by only one family.    They both were physicians and carried on a hospital there, one of the rooms being fitted up as an operating room.    The majority of the patients were those of other physicians and they received more income from patients of other physicians than from their own, and their use of the building as a residence was incidental to its use as a hospital.    In a suit in equity brought by owners of lots in the restricted territory against the two

sisters to restrain them from carrying on the hospital as a violation of the restrictions, it was *held,* that the restrictions taken together meant that every building on the land, except club houses, should be in the shape of a dwelling house fitted for occupancy by one family, and that no such building should be used as an apartment house, a family hotel or flats or for any manufacturing, mercantile or mechanical purpose, no other use of the building being forbidden, and therefore, the carrying on of a hospital not being within any of these prohibitions, there was no violation of the restrictions and the bill should be dismissed.

BILL IN EQUITY, filed in the Supreme Judicial Court on June 2, 1906, and amended on May 31, 1907, by the owners of house lots and the houses thereon in a certain block on Bay State Road in Boston, deriving their title either by direct or mesne conveyances from the Riverbank Improvement Company, which imposed certain restrictions on the land, and also by that corporation itself, against the owner of a similar lot in the same block with a house thereon numbered 310, and the sister of such owner, both of them being physicians, to restrain them from using the building as a hospital.

The case was heard by *Loring*, J., who ruled that the plaintiff was entitled to an injunction, and by agreement of the parties reported the case for determination by the full court.

The deed of the defendants and those of the plaintiff owners contained, among others, the following restrictions :

" 1st. No buildings other than dwelling houses (which word shall include club houses), with the usual outbuildings appurtenant thereto, shall be erected, placed or used upon the said land. No stable of any kind, private or otherwise, shall be erected or maintained on any portion of said land. No building erected on this land shall be used as an apartment house, family hotel or flats, or in design or construction be fitted for occupancy by more than one family.

" 2d. No building erected on said land shall be used for any manufacturing, mercantile, or mechanical purposes.

" 3d. No building, except the customary outhouses to dwellings, shall be erected or placed upon the said land, the exterior walls of which shall be composed of any other material than brick, stone or iron."

Later in the deed, separated by other provisions, were the following provisions:

" The restrictions and agreements hereinbefore contained are

intended and shall be for the benefit of the grantor and of the owner or owners from time to time of all the land aforesaid constituting said Block F shown on said plan, and none other."

" The foregoing agreements and restrictions shall not be personally binding on any person or persons, except in respect of breaches committed during his, her or their seisin of or title to the land to which the same relate respectively."

*E. W. Burdett,* (*F. M. Ives* with him,) for the plaintiffs.

*S. J. Elder,* (*H. W. Barnum* with him,) for the defendants.

HAMMOND, J. The first two restrictions contained in the deed from the Riverbank Improvement Company to Whitwell, under whom the defendants claim, are as follows: " 1st. No buildings other than dwelling houses (which word shall include club houses), with the usual outbuildings appurtenant thereto, shall be erected, placed or used upon the said land. No stable of any kind, private or otherwise, shall be erected or maintained on any portion of said land. No building erected on this land shall be used. as an apartment house, family hotel or flats, or in design or construction be fitted for occupancy by more than one family. 2d. No building erected on said land shall be used for any manufacturing, mercantile, or mechanical purposes."

The question is whether the use the defendants are making of this house is a violation of either of these restrictions. It is contended by the plaintiffs that the first sentence of the first restriction is "ungrammatical," and that as properly "reconstructed" it means that no building upon the land shall be used except as a dwelling house, and that upon the facts found by the justice who tried the case the defendants are using the building as a hospital and in this way are violating this restriction. It may be said at the outset that upon its face the sentence is not ungrammatical. It violates no rule of syntax. " Use " is a transitive verb and is employed in a passive form. We may use a building or the building may be used by us. So we may use no buildings other than dwelling houses, or no buildings other than dwelling houses may be used by us. No rule of grammar is violated by either form of expression. And the words taken in either order have a plain, intelligible meaning. Before adopting an interpretation which is not consistent with the natural order of the words and which requires a "reconstruction" of a

perfectly grammatical sentence upon the theory that it is un-grammatical, one hesitates and is inclined to inquire whether after all the trouble is not rather with the interpretation than with the sentence.

It becomes necessary to look into the deed and the circumstances under which it was made. About 1890 the Riverbank Improvement Company acquired title to a large parcel of land and laid it out in building lots. There were many lots, and the deeds given by the company to the respective purchasers contained many restrictions, including those in question. The single justice found that the restrictions were imposed not merely as a matter between grantor and grantee, but to secure to all persons interested in the lots the benefit of them. It is apparent that the company intended that this territory should be a fine residential section of the city, and framed deeds accordingly. The deed is much more complicated than the ordinary deed of real estate. It contains many restrictions, some respecting the nature of the buildings and some respecting the use of the buildings. It bears upon its face strong evidence that great care was taken in preparing the form. We are not dealing with a document hastily and loosely drawn. All the circumstances, including the form itself, indicate that it was a carefully drawn and well considered document.

After a description of the land conveyed the deed makes quite minute provisions concerning the proposed streets, and also concerning passageways and party walls. Having provided for these matters the draftsman takes up the next subjects, names the kind of buildings which may be erected and the use which may be made of them. This brings us to the first restriction. The first sentence describes the external appearance of the buildings. With the exception of club houses, no building except a dwelling house shall be erected or placed or used upon the land. It shall not be erected or placed there, or if by some chance it gets there it shall not be used for any purpose whatever. Hence no school house of ordinary construction can get there except by right of eminent domain, and there cannot be even a church spire to relieve the monotony of the landscape. And there shall be no stable. Only the club house can come in. Not only is the exterior form of the building provided for, but

so is the nature of the interior to a certain extent. The substance of these provisions is that no building shall be there, or, if it gets there, shall be used unless in form it is a dwelling house which in design and construction is fitted for only one family. Having provided for the physical nature of the buildings, the draftsman proceeds to indicate the use which may not be made of them. No building shall be used as an apartment house, family hotel, or flats. And the second restriction provides that no building shall be used for any manufacturing, mercantile or mechanical purposes. In substance the restrictions taken together mean that, however varied may be the character of the buildings they must, with the exception of club houses, be of the shape of a dwelling house fitted for occupancy for one family. No other building shall go there, or if it gets there, it shall not be used for any purpose. And further, no such building shall be used as an apartment house, family hotel, or flats, or for any manufacturing, mercantile or mechanical purpose. No other use of a building is forbidden, and therefore any other lawful use is permitted as an attribute of the ownership of the fee. This interpretation is in accordance with the meaning of the words. It requires no reconstruction of the sentence. Moreover, if the meaning of the final sentence be as contended for by the plaintiffs, namely, " No building on said land shall be used for any purpose except for that of a dwelling house," why was the second restriction, namely, that " no building erected on said land shall be used for any manufacturing, mercantile or manufacturing purposes," inserted at all? If the plaintiffs are right, it was, as truthfully characterized by the counsel for the defendants, " rankest surplusage." Every instrument should be so construed, if reasonably possible, as to give effect to every clause. Again, it seems hardly possible that if it was the purpose of the grantor to do what the plaintiffs contend it should not have so provided in plain language.

In view of the circumstances under which the deed was drawn, the manifest care with which it was drawn, the simplicity and grammatical construction of the sentence and the natural meaning of the language, and the manifest use and purpose of the second restriction and the other considerations hereinbefore mentioned, we think that the interpretation for which the plain-

tiffs contend cannot be adopted. And especially is this so when admittedly such an interpretation is based upon the theory that a sentence, which on its face is grammatically correct, is ungrammatical and needs reconstruction; and when moreover the interpretation makes the second restriction useless. Such an ungrammatical use of language and such needless surplusage is hardly to be expected in a document like this deed.

It is contended that the building has ceased to be one fitted up for one family only. The building has four stories, and it appears that the front room on the third floor has been fitted up in the manner described in the record as an operating room. We do not think this change material. In all other respects the house remains as before. In internal structure the house is still fitted for occupancy by only one family.

The house is occupied by the defendants as their home. They sleep, eat and live there. They have no other home or place of residence. They use the house also as a hospital for surgical and medical cases and as a lying-in hospital for which they have been duly licensed. The majority of patients are those of other physicians, and the defendants receive more income from patients of other physicians than from their own. The justice also found that the use of the building as a hospital is in substance for the treatment of cases brought there by other physicians, and that the use of the building by the defendants as a residence is incident to its use as a hospital.

For reasons which have been stated we are of opinion that such a use is not a violation of the first restriction. Is it a violation of the second restriction? Such a use certainly is not for manufacturing or mechanical purposes. But the plaintiffs contend that it is a mercantile use, and cite in support of this contention *In re San Gabriel Sanatorium Co.* 95 Fed. Rep. 271. That case however is plainly distinguishable from the case before us. The word " merchant " is defined in the Century Dictionary as " one who is engaged in the business of buying commercial commodities and selling them again for the sake of profit, especially one who buys and sells in quantity or by wholesale," or " a shopkeeper or store-keeper "; and " mercantile " is defined thus: " Of or pertaining to merchants or the traffic carried on by merchants; having to do with trade or commerce, trading, com-

mercial." No discussion is needed to show that the use is not commercial.

This case is in many respects like *Stone* v. *Pillsbury*, 167 Mass. 332, and the conclusion which we have reached is supported by that case. See also *Dorr* v. *Harrihan*, 101 Mass. 531. The plaintiffs have cited *Thomas* v. *Commercial Union Assur. Co.* 162 Mass. 29, but that case turned upon the difference in risk between a dwelling house and a hotel, and has no bearing here.

No violation of the restriction having been shown, the entry must be

*Bill dismissed with costs.*