Amy B. Macatee, Plaintiff and Appellee, *v.* Dr. Diego Biascochea, doing business under the name of "Clínica de Miramar," and Anna Axtmayer, Defendants and Appellants.

No. 4073.   Argued January 14, 1927.—Decided June 25, 1927.

*Henry G. Molina* for the appellants.  *R. Castro Fernández* for the appellee.

Mr. Justice Franco Soto delivered the opinion of the court.

Amy B. Macatee petitioned for an injunction against Dr. Diego Biascochea and Anna Axtmayer, alleging that Diego Biascochea is the owner of the "Clínica de Miramar," a hospital where he practices his profession as surgeon for gain, rents rooms to patients and gives accommodation for other doctors to practice their profession for a consideration; that the plaintiff is the exclusive owner of house No. 6 Olimpo Avenue in Miramar, Santurce, of this city, and it is recorded in the registry of property; that defendant Anna Axtmayer is the owner of property No. 4 adjoining hers and also recorded in the registry of property; that the petitioner's property as well as that of Anna Axtmayer and all the other properties adjacent thereto are segregations from a larger property which has been divided into building lots by its owner, The People's Cooperative Building, Saving & Loan Association of Porto Rico, for the purpose of making of said properties a locality completely and exclusively residential, and with that end in view all of the said properties, including those of the petitioner and of the defendant, were sold by the said association subject, among others, to the following restriction: "These lots shall not be used for

mercantile or industrial establishments, but strictly for the erection of dwelling houses''; that this restriction was made to appear in the registry of property and encumbers the properties of the plaintiff and the defendant respectively; that the restriction has not been limited or altered and is in full force and effect and both the petitioner and defendant Anna Axtmayer acquired them with knowledge of and subject to that restriction; that about the month of September, 1925, defendant Anna Axtmayer rented her property No. 4 to defendant Diego Biascochea to be turned by him into a hospital or clinic and that since October he has been preparing and fitting up the house for that purpose; that as soon as such preparations were begun the plaintiff, on October 2, 1925, gave written notice to both defendants to abstain from using the said building for other than residential purposes, calling their attention to the restriction mentioned; that notwithstanding such notice and demand, defendant Diego Biascochea prepared and fitted up the building as a hospital or clinic, installed an operating room and on February 20th, 1926, received several patients into the building and since that date has been attending them, using the building as a paying hospital and for purposes other than residential, all with the knowledge and consent of defendant Anna Axtmayer; that the distance between the plaintiff's house and that occupied by Diego Biascochea and belonging to the other defendant is scarcely four meters; that the petitioner is caused great and irreparable injury by the installation of the hospital or clinic, and that the noises, odors and other things necessarily occurring in a hospital constitute a disturbance and a danger to the petitioner.

Defendant Diego Biascochea alleged in his answer that the complaint did not state facts sufficient to constitute a cause of action. It does not appear from the record that that plea was submitted to the court or ruled on, and it seems

to have been abandoned, for no mention is made of it by the appellant in his brief.

The defendant admitted counts 1, 2, 3, 4, 5, and 7 of the complaint. Admission was made, therefore, of the allegations of the plaintiff regarding the terms of the restrictive covenant and the fact that defendant Anna Axtmayer rented her property adjoining that of the plaintiff to Dr. Biascochea to be used as a hospital or clinic.

The defendant denied other averments of the complaint and set up several defenses which will be considered in discussing the errors assigned in his brief.

The parties agreed by stipulation to have the case tried and decided on its merits on the evidence submitted at the hearing on the rule to show cause, so that the lower court should render judgment granting or refusing the final injunction prayed for in the complaint. After hearing the evidence the court rendered judgment contrary to the various defenses pleaded by defendant Biascochea and granting the injunction on the merits of the case, commanding the defendants to discontinue the use of house No. 4 Olimpo Avenue, Miramar, Santurce, as a hospital or clinic, with the costs against Biascochea.

The only appellant from that judgment was Dr. Diego Biascochea, who assigned in his brief six errors which we shall consider.

The appellant alleges that the court erred in failing to find that the plaintiff was guilty of laches in not having filed her complaint seasonably, thus allowing him to incur heavy expenses.

The evidence showed that the plaintiff heard rumors about the month of September, 1925, that house No. 4 Olimpo Avenue was going to be fitted up as a maternity hospital. She saw there several nurses who were living in the house and was informed that it was to be the living quarters of the nurses. She sailed for the United States on

September 26th and left instructions with her niece, Eva Granis, to consult a lawyer if she saw any act or move in house No. 4. As soon as Eva Granis saw in the house nurses and that furniture was being painted, at the end of September she informed attorney Castro, who on October 2, 1925, wrote to the defendants the following letter:

"Clínica Miramar, c/o Dr. Biascochea, Santurce, P. R.—Gentlemen: I inform you hereby in representation of Mrs. Amy B. Macatee, the owner and resident of house No. 6 Olimpo Avenue, Santurce, P. R., that according to the conditions imposed on all purchasers of Miramar building lots it is forbidden to construct any building thereon for other than residential purposes.—Mrs. Macatee has been informed that it is your intention to use house No. 4 Olimpo Street as a hospital, and as this is in express contravention of the building conditions referred to, I hereby demand in her name that you refrain from renting or using the building for other purposes than as a private dwelling.—Mrs. Macatee would dislike to have to take this matter to the courts, but she is ready, at the slightest move on your part to use the building as a hospital or clinic, to file an injunction proceeding against you and the owner of the property.—Hoping you will not give cause for her taking this step, I am, Yours truly, R. Castro Fernández."

A copy of this letter was delivered by attorney Castro to the other defendant through her son, Henry Axtmayer, who answered, according to the testimony of that attorney, that "you should not worry because the property had been rented to Dr. Biascochea to be used only as sleeping quarters for the nurses and for any visitors who might care to sleep there." Defendant Anna Axtmayer did not answer the letter; but the other defendant answered it as follows:

"October 10, 1925.—Attorney Rafael Castro Fernández, Post Office Box 225, San Juan, P. R.—My dear friend: In representation of Dr. Diego Biascochea I answer your letter of October 2 of this year. I regret to say to you that your client is absolutely wrong in this matter. I have examined carefully the deed of sale executed by The People's Cooperative Building, Saving & Loan Association of

Porto Rico in favor of Mrs. Anna Axtmayer. One of the clauses of the deed explicitly forbids the erection of buildings on the Miramar building lots to be used for commercial or industrial purposes. As it is not expressly prohibited to use a building already erected as a hospital, it seems to me that the case to which your client refers need not be discussed. If what your client states were true and if she were right, we would have to remove from the Miramar section the hotel which exists there at present and the Miramar Hospital which has been in operation for some time. For these reasons I think that you should advise your client to take other steps if she does not like to have Dr. Biascochea set up a hospital near her residence. Without having more to say, I am, Your sincere friend and colleague, E. Campos del Toro.''

This answer did not satisfy the plaintiff, who on October 21, 1925, wrote the defendant a second letter, as follows:

''Attorney Enrique Campos del Toro.—Post Office Box 754, San Juan, P. R.—My dear colleague: I received your letter of the 10th inst. in answer to mine addressed to Dr. Diego Biascochea in regard to the extension of the 'Clínica de Miramar.' All that I ask you to inform me is whether or not it is the intention of the 'Clínica de Miramar' to use the house in front of it for other than residential purposes. Hoping that you will favor me with an early answer, I remain, Yours truly, R. Castro Fernández.''

The plaintiff, however, waited for information as to the intention of the defendant during the following months until February 20, 1926, when she saw for the first time that patients were being received into house No. 4, and believing that she had discovered from positive acts the purpose to establish a clinic or hospital in that place, she brought the matter before the court about four days thereafter.

As the question of laches as a defense in equity depends not upon the fact that a certain definite time has elapsed since the cause of action accrued, but upon whether, under all of the circumstances of the case, the plaintiff is negligent in not instituting the proceeding in due time, letting an innocent person incur expenses in the consummation of a

business or the building of a structure, it could not be contended in the present case that the petition had not been filed in due time or that the defendant had innocently incurred the expenses alleged by him. The plaintiff protested as soon as she saw that certain preparations were being made in the leased building, such as the presence of nurses and the bedsteads and tables painted white that were being moved into it. She became alarmed and took the first steps to ascertain definitely whether or not they were installing a clinic or hospital. The answers were vague and evasive, and the uncertainty of the plaintiff was thus continued until the 20th of February, 1926, when she saw that patients were being received in house No. 4 to be there treated as such.

It is sufficient to mention the facts in the cases cited by the appellant in order to see that they are not applicable to this case. In the case of *González* v. *Rivera*, 31 P.R.R. 291, the plaintiff remained silent during the construction of the building of which he complained after its erection. In *Loud* v. *Pedergast*, 206 Mass. 122, it was held that a party can not *stand by in silence* while another *in good faith* incurs considerable expense and then attempt to have the restriction enforced. (Italics ours). The case of *Ghines* v. *Matta*, 19 P.R.R. 388, is also adverse to the appellant. In that case, after a discussion of the facts and the legal grounds of the doctrine of laches, this court, by Mr. Justice Wolf, said:

"The proof shows that the defendants were notified by the complainants or their agents that they were violating the building agreement at a moment when the walls of the building had progressed a very short distance and within twenty days thereafter the complaint was filed. Under these circumstances we see no laches on the part of the respondents. With regard to the fact that the building was nearly completed when the complainants began their suit, we think that the fact that the defendants were bound to know the restrictive agreement, that they were notified when the building had progressed but a short way and still persisted in going on with the building, would prevent them from complaining of the action of the court.

However, as the defendants must have known from the registry that buildings were not to be put up in the three-meter space and still erected these garages they have no one to blame but themselves.''

Therefore, under the circumstances of the present case and in the light of the jurisprudence cited, we may conclude that the plaintiff filed in due time her action in the lower court.

The third and fourth assignments of error are argued together by the appellant. It is thereby alleged that the plaintiff is estopped from requiring compliance with the restrictive covenant because she has kept boarders in her own building and permitted the establishment of the Clínica de Miramar, and it is likewise alleged that the restriction as to the use of the house in controversy is of no force and effect by reason of the changes that had occurred in the locality near houses Nos. 4 and 6 of Olimpo Avenue.

The lower court overlooked in its lengthy opinion, perhaps · because it deemed it unnecessary, to consider the contention of the appellant that the fact that the plaintiff had kept a boarding-house constituted an estoppel. However, we do not believe that this point requires careful consideration, for that fact does not estop the plaintiff from demanding compliance with the restriction, since it does not constitute a violation of the agreement. In *Glines* v. *Matta, supra,* a similar contention was decided in the sense that it was not an estoppel to the action of the plaintiff. The court expressed itself as follows:

''The court was of the opinion, and we agree therewith, that the violations were of no particular importance and did not constitute such an open and manifest transgression as would prevent complainants from seeking the relief of injunction, and the theory of the court is supported by the case of *Bacon* v. *Sandberg,* 179 Mass. 396.''

We may add as a substantial and independent ground that in view of the purpose of the restrictive clause, which we

shall examine later on its merits, the mere fact of the plaintiff's receiving and keeping boarders in her own house does not affect that purpose, since that house did not lose the character as a residence or dwelling exclusively referred to in the covenant.

Nor is there any merit in the defense of estoppel alleged in connection with the existence of the old Clínica Miramar on Olimpo Avenue opposite the house of the plaintiff and of certain buildings existing in the neighborhood, namely, the Union Club, the Miramar Hotel and the Miramar Apartments. As a question of fact, and these propositions being defenses opposed by the defendant, it has not been shown that those buildings were subject to the same restrictions as the houses of the plaintiff and of Anna Axtmayer. It appears from the record that of the main property reservation was made of lots Nos. 122 to 125, block E, and of lots Nos. 98 to 104, block L, to be sold free from the restrictions imposed on other lots. Therefore, was it not incumbent on the defendant to establish as a premise for his argument that those buildings were subject to the same restrictions? No proof to that effect appears from the record.

Besides, the jurisprudence respecting this kind of estoppel, in establishing general rules, says:

"The fact that the right to injunctive relief against violation cf a restrictive covenant has been lost by laches or acquiescence in no way affects the right to enjoin further violations of the covenant." 32 C.J. 211.

In the note thereto citation is made of the case of *Hartwig* v. *Grace Hospital*, 198 Mich. 725, 165 N. W. 827; *Leaver* v. *Gorman*, 73 N. J. Eq. 129, 67 A. 111; *Phillips* v. *Dunseith*, 269 Pa. 251, 112 A. 240. It is therein further stated:

"Where complainant lost her right by acquiescence to enjoin

defendant from running a bottling factory in violation of a covenant restricting the use of land where for several years she did not seek to enforce it, she did not thereby lose the right to enjoin an extension of the business.` *Leaver* v. *Gorman,* 73 N.J. Eq. 126, 67 A. 111. And owners in a district restricted to dwellings, who stand by and allow a dwelling to be altered at different times, at large expenditures of money, out of all semblance to a dwelling and used as a hospital, will not be granted an injunction to restrain its maintenance as such, although an injunction will be granted to restrain additional buildings."` *Hartwig* v. *Grace Hospital,* 198 Mich. 725, 165 N. W. 827.

Apart from the fact that the evidence has not proved that the different buildings referred to are subject to the agreement, it has not been shown that the changed conditions that may have taken place in Miramar owing to the use made of those buildings have been of such a nature as to invalidate substantially the restrictive covenant as regards the dominant residential part. At least the facts of the present case do not lead us to that conclusion.

In the case of *Landell* v. *Hamilton,* 175 Pa. 327, 34 A. 663, 34 L.R.A. 227 (Old Series), the rule is laid down as follows:

"Where more than half the houses in a neighborhood are used as residences, though some of them are partially used for business purposes, the contention of the defendant that there has been such change in the conditions of that neighborhood as to show that the restriction no longer exists, cannot be sustained.

"Where restrictions regarding the use of the land and buildings notwithstanding the changed conditions has a substantial value for the dominant estate; a court of equity will grant an injunction restraining its violation."

The second assignment of error is the one that goes to the bottom of the case.

The appellant contends that the use that he was making and intended to make of the rented house was not in violation of the restrictive clause that the lots into which the Miramar property had been divided, with the exceptions

already mentioned, "shall not be used for commercial or industrial establishments, but strictly for the erection of dwellings." The appellant, in his brief, after referring to the case of *Smith* v. *Graham,* 147 N.Y.S. 773, 112 N. E. 1076, because it had been cited by the lower court, argues thus: "But in reality the defendant, as shown by the evidence, was not using, nor does he intend to use, the said building as a hospital (were he to do so then the plaintiff would be entitled to bring an injunction proceeding)."

It seems, however, that the attorney for the appellant did not stop to examine the pleadings, for the answer admits in the second defense averments 2, 7 and 9 of the complaint where in short it was alleged that Dr. Biascochea was the owner of the Clínica de Miramar, a hospital where he practices for gain the profession of surgery, rents rooms to patients and to other doctors where they may, by the payment of a certain sum of money, practice their profession; that about the month of September, 1925, defendant Anna Axtmayer rented house No. 4, belonging to her, to Dr. Biascochea to be used by him as a clinic or hospital, and that on February 20, 1926, he received several patients into the said building and has since treated them and used the building in question as a hospital for gain and for other than residential purposes.

These admissions were ratified at the trial by the defendant himself, for Dr. Biascochea in his testimony, among other things, said:

"A.—Have you set up any clinic as a branch of your old clinic in house No. 4 Olimpo Avenue belonging to Mrs. Anna Axtmayer? W.—I leased it for the purpose of establishing a clinic as an extension of the present one. A.—How long have you had patients in that clinic? W.—Since Saturday before last. A.—The 20th of February? W.—Yes. A.—Do you charge the patients for the treatment or do you treat them gratuitously? W.—I charge the patients for the treatment; it is not a charity hospital. A.—Do you rent rooms to patients? W.—The rooms of the hospital are for the use of the patients. A.—But you pay for medical attendance

in the premises occupied by you? W.—Yes. A.—Is it also true that other doctor's practice their profession there on the payment of fees? W.—Yes. A.—Is it true or not that on the 20th of February the only thing you did on that property, referring to house No. 4, was to have some white bedsteads taken in, to have certain pieces of furniture painted white and to have the nurses sleep in that building? W.—Ever since I secured the building it was my purpose to establish therein a clinic as an extension of the present one. A.— Tell me what you did then? W.—I leased the house in order to establish a clinic and use the top floor as quarters for the nurses, and preparations have been under way since it was taken over."

From a consideration of the argument of the appellant mentioned, there would not be any discussion as to the propriety of the injunction. However, we shall say something in regard to the meaning of the restrictive clause. It is therein stipulated that the lots of the main property, "shall not be used for commercial or industrial establishments, but strictly for dwellings." The question is the meaning of the words used.

Both in Spanish and English the word "habitation" is equivalent to residence or dwelling.

" 'Habitación': Part of a building used as a domicile or for sheltering persons without injury to their health. Any of the rooms into which a house is divided." Rodríguez Navas' Dictionary of the Spanish language.

" 'Habitación': The word 'habitación' comes from the Latin 'habitation'; as a forensic word it is mainly used when dealing with the Right of Habitation, already dealt with in the proper place. It means the private quarters of a house for domestic use by persons, or the whole thereof when it is not used for anything else." Enciclopedia Jurídica Española.

" 'Habitation': Part of a building used for living in. Abode, residence, dwelling." Salvat's Dictionary.

" 'Habitation': Place of abode; settled dwelling; residence; house." Webster's New International Dictionary.

It seems then that the best translation into English of the words "casas para habitación" is "dwelling houses for residence purposes."

" 'Dwelling house': A house occupied as a residence, in distinction from a store, office, or other building." Webster's New International Dictionary.

The case of *Hartwig.* v. *Grace Hospital, supra,* cited by the lower court, presents a similar situation to the present case. The restrictive clause had the same purpose and the building to which the agreement referred was proposed to be enlarged and used as a hospital, and the court said:

"The restriction that no building shall be erected on that land for other than residential purposes or in connection therewith is violated by the use of the building, whether or not additions are made thereto, as a hospital, as well as by the erection of a building to be used as living quarters for nurses."

Likewise, in the case of *Smith* v. *Graham, supra,* a similar restriction, perhaps more liberal in its terms, was construed and yet the court expressed itself as follows:

"Where land is sold under certain covenants prohibiting the carrying on thereon of commercial or manufacturing enterprises as well as the erection of buildings for other than residential purposes and there is an additional clause in the deed of conveyance allowing the grantee to receive and care for patients and likewise perform surgical operations in the houses erected on said land, the grantee is not thereby empowered to build a hospital thereon, even though he has been a surgeon for many years and has dubbed his house a sanatorium, since a hospital is quite different from a residence."

The appellant cites only the case of *Carr* v. *Riley,* 198 Mass. 70, 84 N. E. 426. Although this case construes what may be understood by a mercantile establishment, the circumstances of the case are different. The court itself says that the covenant is a complex one. The case is so limited by its own circumstances that it could not be possible to draw therefrom rules of general application, chiefly if each case must be governed by its own peculiar conditions. Therefore, we agree with the lower court that the restriction had been violated by the defendants.

The appellant alleges in his fifth assignment of error that the judgment is indefinite and that it should have been more specific.

The dispositive part of the judgment is as follows:

"On this day the court, for the reasons set forth in the opinion which is made a part of this judgment, renders judgment sustaining the petition for an injunction and by virtue thereof commands the defendants not to continue using house No. 4 Olimpo Avenue, Miramar, Santurce, . . . as a hospital or clinic."

We do not believe that it should be difficult to define the terms of the judgment. The words "hospital or clinic" are of such current use that their meaning seems to be known to everybody, especially to the defendant, Dr. Biascochea, who is enjoined from using the rented building for such purposes. Everything connected with the caring for, treating or keeping patients or performing operations in house No. 4 Olimpo Avenue is included in the judgment of injunction.

The last assignment refers to the costs. Suffice it to say that this case shows manifest temerity on the part of the defendant. In the first place he knew from the registry of property that house No. 4 could not be used for other than residential purposes. He was advised, moreover, by the plaintiff as soon as he had leased the house of the existence of the covenant, and that the plaintiff would oppose the installation therein of a clinic or hospital, and was requested by her to desist therefrom. The defendant answered, but his letter was rather a challenge to the friendly request of the plaintiff. The trial court, therefore, made proper use of its discretion in imposing the costs upon the defendant.

For the foregoing reasons the judgment appealed from must be affirmed.

Mr. Chief Justice Del Toro took no part in the decision of this case.