CASOS RESUELTOS

POR LA

# CORTE SUPREMA DE PUERTO RICO

AMY B. MACATEE, demandante y apelada, *v.* DR. DIEGO BIASCO-
CHEA, haciendo negocios bajo el nombre de CLÍNICA DE
MIRAMAR, y ANNA AXTMAYER, demandados y apelantes.

No. 4073.—*Visto:* Enero 14, 1927. *Resuelto:* Junio 25, 1927.

1. INJUNCTION — ACCIONES DE INJUNCTION — DESCUIDOS, FALTAS Y DEMORAS
   (*Laches*).—Cuando un edificio levantado en terrenos sujetos a la restricción
   de no levantar edificación que no sea para residencia se alquila para ser dedi-
   cado a un fin distinto—hospital o clínica—y un vecino notifica al arrendador
   y arrendatario se abstengan de dedicarlo a otros fines que no sean para resi-
   dencia, les llama la atención hacia la restricción y no obstante preparan y
   acondicionan la edificación para clínica y lo ocupan con enfermos para ser
   tratados como tales, la actuación de dicho vecino no lo hace culpable de
   *laches* en el ejercicio de su acción presentando días después su asunto a la
   corte.
2. INJUNCTION—ACCIONES DE INJUNCTION—*Estoppel* PARA SOLICITARLO.—Estando
   la restricción al uso de unos terrenos limitada a construcciones residenciales
   o de morada, el mero hecho de haber recibido y mantenido unos huéspedes
   en su casa levantada en dichos terrenos sujeta también a la restricción, no
   constituye impedimento alguno para que él ejercite el remedio de *injunction*
   para hacer efectiva dicha restricción.
3. INJUNCTION—NATURALEZA Y FUNDAMENTOS EN GENERAL—FUNDAMENTOS DEL
   REMEDIO—DEFENSAS EN GENERAL—EN GENERAL.—La defensa de estar im-
   pedido el demandante de hacer efectiva restricciones que limitan el dominio
   al uso de un solar a edificaciones para residencias o morada, por haber per-
   mitido el establecimiento de otros no destinados a dichos fines carece de mé-
   rito cuando del récord aparece que unas fincas estaban sujetas y otras no a
   dicha restricción y no se prueba que las tales edificaciones permitidas estu-
   vieran sujetas a la prohibición.
4. INJUNCTION—MATERIAS OBJETO DE PROTECCIÓN Y REMEDIO—CONTRATOS—CON-
   VENIOS QUE LIMITAN EL DOMINIO AL USO DE UNA FINCA—RESTRICCIONES
   RESPECTO A EDIFICACIONES—Cuando en *injunction* para impedir la violación
   de cláusulas restrictivas del dominio al uso de unas fincas a fines residen-
   ciales solamente se alega que éstas no tienen validez y efecto en virtud de
   cambios ocurridos y no se prueba que éstos sean de tal naturaleza que aqué-
   llas hayan quedado sin lugar en cuanto a la parte dominante residencial, pro-
   cede declarar con lugar dicho *injunction*.
5. INJUNCTION—MATERIAS OBJETO DE PROTECCIÓN Y REMEDIO—CONTRATOS—CON-
   VENIOS QUE LIMITAN EL DOMINIO AL USO DE UNA FINCA—RESTRICCIONES

1

RESPECTO A EDIFICACIONES.—Ejercitado *injunction* para impedir la violación de cláusulas restrictivas de terrenos o edificios con fines residenciales en la que el demandado, en su alegato, admite que el uso de un edificio como hospital daría derecho al *injunction*, admitida por las alegaciones y las pruebas la ocupación de un edificio con tal fin, la procedencia del *injunction* es indiscutible.

6. CONVENIOS *(Covenants)*—CUMPLIMIENTO O QUEBRANTAMIENTO *(Breach)*—VIOLACIÓN DE RESTRICCIONES EN GENERAL.—La restricción de no levantar edificación alguna que no sea para fines residenciales impuesta sobre determinados terrenos queda violada al usarse un edificio levantado en dichos terrenos, como hospital.

7. SENTENCIA—INTERPRETACIÓN Y ''OPERATION''—EN RELACIÓN CON LA CUESTIÓN RESUELTA.—En sentencia dictada en procedimiento de *injunction* para hacer efectivas cláusulas restrictivas limitando el dominio al uso de una propiedad a fines residenciales que ordene al demandado se abstenga de continuar utilizando una propiedad para fines de hospital o clínica, todo lo que se refiera a asistir, tratar o tener pacientes o practicar operaciones en dicha propiedad está comprendida en dicha sentencia.

8. COSTAS—DE LA COSTAS Y DEL DERECHO A ELLAS EN GENERAL—CULPABILIDAD O TEMERIDAD.—La temeridad de uno que teniendo conocimiento por el registro de una restricción limitando el dominio al uso de una propiedad y habiendo sido avisado por el demandante de la existencia de tal restricción, viola la misma, es de tal manera manifiesta que justifica la imposición de costas.

SENTENCIA de *Miguel A. Muñoz,* declarando con lugar la solicitud de *injunction*, con costas y honorarios de abogado. *Confirmada.*

Henry G. Molina, abogado del apelante; R. Castro Fernández, abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR FRANCO SOTO, emitió la opinión del tribunal.

Amy B. Macatee estableció demanda de *injunction* contra el Dr. Diego Biascochea y Anna Axtmayer, en la que alega: que Diego Biascochea es dueño de la Clínica Miramar, hospital en donde por lucro se dedica a practicar la profesión de doctor en cirugía, a arrendar habitaciones para los pacientes y sitio en donde, mediante el pago de cierta cantidad, otros doctores ejercen su profesión; que la demandante es única dueña de una finca urbana marcada con el No. 6 en la Avenida Olimpo del barrio de Miramar, Santurce, de esta ciudad, inscrita en el registro de la propiedad; que la demandada Anna Axtmayer es dueña de otra finca colindante con la anterior, marcada con el No. 4 y también inscrita en el regis-

tro de la propiedad; que tanto la finca de la peticionaria como la de la demandada Anna Axtmayer y todas las otras fincas que le rodean, son segregaciones de una de mayor cabida que fué urbanizada por su dueño "La Asociación Popular Cooperativa de Construcciones, Ahorros y Préstamos de Puerto Rico" con el fin de hacer de dichas fincas un sitio completo y exclusivamente residencial y al efecto todas dichas fincas, así como la de la peticionaria y la de la demandada, fueron vendidas por dicha asociación sujetas, entre otras, a la siguiente restricción:

"Estos solares no se destinarán a establecimientos mercantiles o industriales, sino precisamente a construcciones de casas para habitación;"

que esta restricción se hizo constar en el registro de la propiedad y grava las dos fincas de la demandante y demandada y cuya restricción no ha sido limitada o alterada y está en todo su vigor y efecto y tanto la peticionaria como la demandada Anna Axtmayer compraron con conocimiento de y sujeta a dicha restricción; que allá para el mes de septiembre de 1925 la demandada Anna Axtmayer arrendó la finca de su pertenencia, marcada con el No. 4, al demandado Diego Biascochea, con el fin de que éste dedicara el edificio para la construcción de una clínica u hospital y que desde el mes de octubre en adelante dicho demandado ha venido arreglando y acondicionando dicho edificio para ese fin; que tan pronto empezaron a preparar dicho edificio para tal fin, la demandante en octubre 2, 1925, notificó por escrito a ambos demandados para que se abstuvieran de dedicar dicho edificio para otros fines que para residencia, llamándoles la atención hacia la restricción de que se ha hecho mención; que a pesar de tener conocimiento y a pesar del requerimiento hecho, el demandado Diego Biascoechea preparó y acondicionó dicho edificio para clínica u hospital, montó una sala de operaciones y en febrero 20, 1926, ocupó dicho edificio con varios enfermos y desde dicho día ha es-

tado asistiendo a los mismos y dedicando el referido edificio como hospital, por lucro, y para otros fines que no son residenciales, todo con el consentimiento y conocimiento de la demandada Anna Axtmayer; que la distancia entre la casa de la demandante y la ocupada por Diego Biascochea, propiedad de la otra demandada, es apenas de cuatro metros; que la peticionaria con la instalación de la clínica u hospital sufre graves e irreparables daños y que los ruidos, olores y demás actos que necesariamente se hacen en un hospital, constituyen un estorbo y un peligro para la demandante.

Contestó el demandado Diego Biascoechea y alegó en primer lugar que la demanda no aduce hechos suficientes para determinar una causa de acción. No consta de los autos que esta excepción fuera sometida a la corte ni resuelta y parece que fué abandonada, pues nada se menciona de ella por el apelante en su alegato.

Admitió el demandado las alegaciones 1, 2, 3, 4, 5 y 7 de la demanda. Se admitió, por consiguiente, lo que la demandante alega en cuanto a los términos de la cláusula restrictiva y lo relativo a que la demandada Anna Axtmayer arrendó la finca de su propiedad, que colinda con la de la demandante, al Dr. Biascochea, con el fin de que éste dedicara dicha casa para la instalación de una clínica u hospital.

El demandado negó otros hechos de la demanda y alegó varias defensas que serán objeto de consideración y estudio al discutir los errores que el apelante apunta en su alegato.

Las partes hicieron una estipulación por la que convinieron someter por la evidencia presentada en la vista para mostrar causa, el pleito en su fondo para que la corte inferior dictara sentencia concediendo o negando el *injunction* final solicitado en la demanda; y la corte inferior luego de practicada la prueba dictó sentencia desestimando las varias defensas alegadas por el demandado Biascochea y resolviendo el caso en sus méritos declaró con lugar la petición de *injunction*, ordenando a los demandados que se abstengan de continuar utilizando la casa No. 4 de la Avenida Olimpo,

de Miramar, Santurce, para fines de hospital o clínica, imponiendo las costas al demandado.

De esta sentencia solamente apeló el Dr. Diego Biascochea y en su alegato señala la comisión de seis errores que pasamos a considerar.

[1] I. Se sostiene por el apelante que la corte erró al no encontrar a la demandante culpable de *laches* por no haber presentado su demanda oportunamente, habiendo permitido al apelante incurrir en grandes gastos.

La prueba demostró que la demandante allá en el mes de septiembre de 1925 oyó el rumor de que en la casa No. 4 de la Avenida Olimpo se iba a instalar un hospital de maternidad. Vió allí varias enfermeras que estaban viviendo en la casa y se le informó que era una casa para las *nurses* vivir. Ella marchó a los Estados Unidos en 25 de septiembre y dejó instrucciones a su sobrina Eva Granis para que consultara a un abogado si veía alguna acción o movimiento en la casa No. 4. Tan pronto Eva Granis vió enfermeras y pintando muebles en dicha casa, dió aviso a fines de septiembre al abogado Castro, quien con fecha octubre 2, 1925, escribió a los demandados la siguiente carta:

"Clínica Miramar, c/o Dr. Biascochea, Santurce, P. R.—Señores: En nombre y representación de la Sra. Amy B. Macatee, dueña y residente de la casa No. 6 de la Avenida Olimpo, Santurce, P. R., les participo que de acuerdo con las condiciones impuestas a cada persona que compró un solar en la urbanización Miramar, no es permisible dedicar ningún edificio construído en dichos solares a otros fines que para casas residenciales.—La Sra. Macatee ha sido informada que Uds. intentan ocupar el edificio No. 4 de la calle Olimpo, para dedicarlo a un hospital, y estando esto expresamente en contra de las condiciones de edificación antes referida, por la presente les requiero a nombre de dicha señora, para que se abstengan de ocupar o arrendar dicho local para otros fines que de vivienda particular.—Mrs. Macatee detestaría tener que llevar este asunto ante el Tribunal pero está dispuesta al menor movimiento que Uds. hagan para ocupar dicho edificio para clínica u hospital, radicar un *injunction* contra Uds. y contra la dueña de dicha propiedad.—Esperando que

Uds. no darán lugar a que se tome esta medida, quedo de Ud., muy atentamente, R. Castro Fernández.''

Copia de esta carta fué entregada por el abogado Castro a la otra demandada por conducto de su hijo Henry Axtmayer, siendo la contestación de éste, según declaró dicho abogado, que ''no nos preocupáramos, que aquello era solamente arrendado al Dr. Biascochea para dormir las *nurses* y algunos visitantes que quisieran dormir allí.'' La demandada Anna Axtmayer no contestó, sin embargo, la carta, haciéndolo el otro demandado en la siguiente forma:

''Octubre 10 de 1925.—Lcdo. Rafael Castro Fernández, Post Office Box 225, San Juan, Puerto Rico.—Muy estimado amigo: En representación del Dr. Diego Biascochea, contesto tu atenta carta 2 de octubre del presente año. Lamento decirte que tu cliente carece de razón en absoluto en este asunto. He examinado cuidadosamente la escritura de venta que hizo 'The People's Cooperative Building, Saving & Loan Association of Porto Rico' a favor de doña Ana Axtmayer. En dicha escritura y en una de sus cláusulas se prohibe terminantemente la construcción de edificios en los solares de Miramar para dedicarlos a fines mercantiles o sea a casas de comercio o de industria.—No constando expresamente la prohibición de poder dedicar un edificio ya construído para hospital, me parece que está fuera de discusión el caso a que se refiere tu cliente.—Si fuera cierto lo que tu cliente manifiesta y si ella tuviera razón tendríamos que hacer desaparecer del sitio de Miramar el hotel que actualmente existe allí y el Hospital Miramar que hace tiempo está funcionando en ese litoral.—Por estas razones creo que debes aconsejar a tu cliente que tome otras medidas si es que a ella no le agrada el que el Dr. Biascochea establezca un hospital al lado de su residencia.—Sin otro particular me suscribo, tu afmo. amigo y compañero, E. Campos del Toro.''

No satisfecha la demandante con esta contestación, en octubre 21, 1925, se le escribió al demandado una segunda carta, que dice:

''Lcdo. Enrique Campos del Toro.—Apartado 754, San Juan, P. R.—Estimado compañero: He recibido su carta del 10 del corriente en contestación a la mía al Dr. Diego Biascochea sobre la extensión de la Clínica Miramar. Lo único que le suplico que me

comunique si es o no la intención de la Clínica Miramar ocupar la casa situada al frente de la Clínica para otros fines que no sean residenciales.—En espera de su pronta contestación, quedo de Ud., atentamente, R. Castro Fernández.''

La demandante, sin embargo, quedó en expectativa de cuál podía ser la intención del demandado durante los meses que siguieron, hasta que el 20 de febrero de 1926 vió por primera vez que se trasladaron enfermos a la casa No. 4 y creyendo descubrir por actos positivos aquella intención en sentido de establecer una clínica u hospital en dicho local, presentó casi inmediatamente, unos cuatro días después, el asunto a la corte.

Dependiendo la cuestión de *laches* como defensa en equidad, no sobre el hecho de que cierto tiempo definido haya pasado desde que la acción ha surgido, sino de si bajo todas las circunstancias del caso el demandante es negligente en no instituir el pleito oportunamente, permitiendo que una persona inocente incurra en gastos en la consumación de un negocio o construcción de una obra, no podía sostenerse en este caso que la petición no hubiera sido establecida a su debido tiempo ni que el demandado incurriera inocentemente en los gastos que alega haber incurrido. La demandante protestó desde los primeros momentos que vió que se hacían ciertos preparativos en el edificio arrendado, como fueron las *nurses* que allí vió y las camas y mesas pintadas de blanco que allí se trasladaban. Ella se alarmó y dió los primeros pasos para saber a ciencia cierta si se trataba o no de la instalación de una clínica u hospital. Las contestaciones fueron vagas y evasivas y así se mantuvo en la incertidumbre a la demandante hasta el 20 de febrero de 1926 en que vió que se llevaban a la casa No. 4 enfermos para ser tratados como tales.

Basta una indicación de los hechos en los casos que cita el apelante para que se vea su indebida aplicación a los de este caso. En el caso de *González* v. *Rivera,* 31 D.P.R. 306, el demandante permaneció en silencio mientras se construyó

el edificio del que se quejó luego de construído. En el de *Loud* v. *Pedergast,* 206 Mass. 122, se habla de que una parte no puede *permanecer en silencio* entretanto otra *de buena fe* hace considerables gastos para entonces pedir que se haga efectiva la restricción. Las itálicas son nuestras. Y el de *Glines* v. *Matta,* 19 D.P.R. 409, es también contrario al apelante. En este último caso discutiendo los hechos y la razón legal de la doctrina de *laches,* dijo esta corte por voz del Juez Sr. Wolf, lo siguiente:

"Aparece de la prueba que los demandados fueron notificados por los demandantes o sus agentes con respecto al hecho de que estaban infringiendo el convenio sobre construcciones, en momentos en que las paredes de las edificaciones habían progresado muy poco, y dentro de veinte días después, fué presentada la demanda. Teniendo en cuenta estos hechos no vemos que haya habido negligencia alguna por parte de los apelados. Con respecto al hecho de que las edificaciones estaban casi terminadas cuando los demandantes comenzaron el pleito creemos, que el hecho de que los demandados estaban obligados a conocer las cláusulas restrictivas, que fueron notificados poco después de haber empezado la edificación y que insistieron todavía en seguir adelante con la edificación, están impedidos de hacer alegaciones en contra de la acción tomada por la corte. Sin embargo, como los demandados debieron saber por el registro, que no podían hacerse edificaciones en el espacio de tres metros y esto no obstante edificaron los garages, ellos solamente son culpables por sus propios actos."

Así es que bajo las circunstancias que ocurrieron en este caso y a la luz de la jurisprudencia citada, podemos concluir que la demandante en la fecha que acudió a la corte inferior lo hizo oportunamente.

[2] II. Los errores tercero y cuarto se discuten por el apelante conjuntamente. Estos errores se refieren a que la demandante está impedida de hacer que se cumpla la restricción por haber mantenido en su propio edificio una casa de huéspedes y permitir el establecimiento de la Clínica Miramar, y asimismo alega que la restricción al uso de la casa en controversia no tiene más validez y efecto en vir-

tud de cambios ocurridos en la vecindad próxima o inmediata a los edificios Nos. 4 y 6 de la Avenida Olimpo.

La corte inferior pasó por alto en su extensa opinión, y tal vez fué por creerlo innecesario, considerar la contención del apelante de constituir un *estoppel* para la demandante haber mantenido una casa de huéspedes. No creemos, sin embargo, que exija detenida consideración el punto sugerido, pues tal circunstancia no priva a la demandante demandar el cumplimiento de la restricción por no constituir una violación del convenio. En *Glines* v. *Matta, supra,* se resolvió la contención, dirigida en el mismo sentido, de que no era un impedimento para la acción del demandante. La corte dijo así:

". . . La corte fué de opinión y en eso estamos conformes, que las infracciones no tenían gran importancia, y que por tanto no constituían una abierta y manifiesta violación de tal naturaleza que quedaran impedidos los peticionarios de poder ejercitar el remedio del *injunction,* estando apoyado el criterio sustentado por la corte en el caso de Deacon v. Sadberg, 179 Mass. 396."

Podemos añadir como razón esencial e independiente que dado el propósito de la cláusula restrictiva, la que más adelante analizamos en sus méritos, el mero hecho de haber recibido y mantenido huéspedes la demandante en su propia casa, no varía tal propósito, ya que no dejaba dicha casa de conservar el carácter residencial o de morada a que exclusivamente se refiere el convenio.

[4] También carece de mérito la defensa de *estoppel* que se hace en relación con la existencia de la antigua Clínica Miramar, situada en la Avenida Olimpo, al lado opuesto de la casa de la demandante y ciertos edificios existentes en la vecindad, a saber, el Union Club, Hotel Miramar y "Miramar Apartments." Como cuestión de hecho y siendo esas proposiciones defensas opuestas por el demandado, no se ha probado que tales edificaciones estuvieran sujetas a las mismas restricciones que las casas de la demandante y de Anna Axtmayer. Según se desprende del récord, de la

finca principal se reservaron los solares Nos. 122 al 125,
manzana E, y 98 al 104, manzana L, para ser vendidos li-
bremente, sin la restricción que se imponía a los demás so-
lares.   Y siendo esto así, ¿no correspondía establecer al de-
mandado como premisa para su argumentación que aque-
llas construcciones estaban sujetas a la misma prohibición?
La prueba en tal sentido no aparece del récord.

Además, la jurisprudencia en cuanto a esta clase de
*estoppel,* sentando principios generales, dice lo siguiente:

"El hecho de que el derecho a una sentencia de *injunction* para
impedir la violación de una cláusula restrictiva se haya perdido
por negligencia o aquiescencia, no afecta en manera alguna el de-
recho a restringir violaciones posteriores de la cláusula." 32 C. J.
p. 211.

En la nota de la obra se citan los casos de *Hartwig* v.
*Grace Hospital,* 198 Mich. 725, 165 N. W. 827; *Leaver* v.
*Gorman,* 73 N. J. Eq. 129, 67 A. 111; *Phillips* v. *Dunseith,*
269 Pa. 251, 112 A. 240, diciendo además:

"Cuando por aquiescencia la peticionaria ha perdido su derecho
a una sentencia de *injunction* contra el demandado por tener una
fábrica de botellas en violación a una cláusula impidiendo el uso
de terrenos por no haber presentado la petición durante varios años,
no por ello pierde el derecho de obtener sentencia de *injunction* al
tratar el demandado de agrandar el negocio. Leaver v. Gorman,
73 N. J. Eq. 129, 67 A. 111. Y a los propietarios en un distrito
limitado exclusivamente a residencias, que se cruzan de brazos y
permiten que se altere un edificio en distintas épocas, se gasten
grandes sumas de dinero, se le quite todo el aspecto de una residen-
cia y que se use como un hospital, no se les concederá un *injunction*
para impedir su continuación como tal, aunque sí se concederá un
*injunction* para impedir la fabricación de nuevos edificios. *Hartwig*
v.*Grace Hospital,* 198 Mich. 725, 165 N. W. 827."

[5] Aparte de que la demandante no ha probado que
las diferentes edificaciones a que se ha referido estén suje-
tas al convenio, tampoco se ha demostrado que el cambio
que ha podido existir en Miramar por el uso a que se de-
dican tales edificaciones, ha sido de tal naturaleza que haya

dejado sin valor sustancial el convenio o restricción en cuanto a la parte dominante residencial. Por lo menos las circunstancias de este caso no nos llevan a esa conclusión.

En el caso de *Landell* v. *Hamilton,* 175 Pa. 327; 34 A. 663; 34 L.R.A. 227 (Old Serie), se establece la regla expresándose así:

"Cuando más de la mitad de las casas en la vecindad están ocupadas como residencias, aunque algunas de ellas son dedicadas parcialmente a negocios, la contención del demandado de que ha habido tal cambio en la vecindad que le justifica que la restricción ha llegado a su fin, es insostenible.

"Cuando la restricción respecto al uso de los terrenos y edificios a pesar de los cambios habidos, tiene un valor sustancial para el predio dominante, una corte de equidad declarará con lugar una demanda de *injunction* para impedir su violación."

[6] III. El segundo error apuntado es el que se contrae al fondo del caso.

Sostiene el apelante que el uso que estaba haciendo y deseaba hacer de la casa arrendada no violaba la cláusula restrictiva, que establece que los solares en que se ha dividido la finca Miramar, con la excepción que hemos indicado antes, "no se destinarán a establecimientos mercantiles e industriales, sino precisamente a construcciones de casas para habitación." El apelante en su alegato, después de referirse al caso de *Smith* v. *Graham,* 147 N.Y.S. 773, 112 N.E. 1076, por haber sido citado por la corte inferior, argumenta de este modo: "Pero en realidad, y según se desprende de la evidencia, el demandado no estaba usando, ni es su intención usar, dicho edificio como hospital, (si lo hace entonces la demandante puede establecer su demanda de *injunction*)."

Parece, sin embargo, que el abogado del apelante no se detuvo a examinar las alegaciones, pues la contestación admite en la segunda defensa los hechos 2, 7 y 9 de la demanda, y por ellos, en síntesis, se alega: que el Dr. Biascochea es dueño de la Clínica Miramar, hospital en donde

por lucro se dedica a practicar la profesión de doctor en
cirugía, a arrendar habitaciones para los pacientes y sitio
en donde, mediante el pago de cierta cantidad de dinero,
otros doctores ejercen la profesión; que allá para el mes
de septiembre de 1925 la demandada Anna Axtmayer arrendó
la finca No. 4 de su propiedad al Dr. Biascoechea, con el fin
de que éste dedicara el edificio para la instalación de una
clínica u hospital y que el 20 de febrero de 1926 ocupó di-
cho edificio con varios enfermos y desde dicho día los ha
estado asistiendo y dedicando el referido edificio como hos-
pital, por lucro y para otros fines que no son residenciales.

Estas admisiones fueron ratificadas por el propio de-
mandado en el juicio, pues entre otras cosas en su declara-
ción el Dr. Biascochea dice lo siguiente:

"A.—¿En la Avenida Olimpo No. 4, en la casa propiedad de
doña Anna Axtmayer, Ud. ha instalado alguna clínica como sucur-
sal de su clínica vieja? T.—Lo arrendé con el objeto de establecer
una clínica para agrandar la clínica actualmente. A.—¿Desde
cuándo Ud. tiene pacientes en esa clínica? T.—Desde el sábado
antipasado. A.—¿El 20 de febrero? T.—Sí, señor. A.—¿Ud. per-
cibe beneficios por curar a esos enfermos o lo hace gratuitamente?
T.—Yo recibo honorarios por curar a esos enfermos. No es un hos-
pital de caridad. A.—¿Ud. también alquila habitaciones para los
enfermos? T.—Las habitaciones del hospital son para enfermos.
A.—¿Pero Ud. paga por la asistencia médica en el local que ocupa?
T.—Sí, señor. A.—¿También es cierto que otros doctores ejercen
allí su profesión mediante el pago de honorarios? T.—Sí, señor.
A.—¿Es o no cierto que Ud. el sábado 20 de febrero Ud. lo único
que hizo en esa finca, refiriéndole al No. 4, es introducir ciertas ca-
mas color blanco, pintar ciertos muebles color blanco y dormir cier-
tas enfermeras en ese local? T.—Desde que cogí el local fué con
objeto de establecer una clínica para agrandar la clínica que existe.
A.—Diga lo que hizo entonces. T.—Al arrendar la casa la tomé
para establecer una clínica y establecer en el piso alto habitaciones
para las enfermeras, y se ha venido preparando desde que se tomó."

Según la argumentación que indicamos del apelante, no
debía existir discusión en cuanto a la procedencia del *in-
junction*. Sin embargo, diremos algo más acerca de la sig-

nificación de la cláusula restrictiva. Esta habla de que los solares de la finca principal "no se destinarán a establecimientos mercantiles o industriales, sino precisamente a construcciones de casas para habitación." La cuestión es fijar la significación de las palabras "casas para habitación."

Tanto en español como en inglés la palabra "habitación" es sinónima de "residencia" (*residence*) o morada (*dwelling*).

"Habitación: Parte del edificio que se destina para domicilio o para albergue de personas sin perjuicio para la salud de éstas. Cualquiera de los aposentos en que se divide una casa." Diccionario de la Lengua Española, por Rodríguez Navas, pág. 760.

"Habitación: La palabra *habitación* procede del latín *habitatio;* como vocablo forense se emplea principalmente al tratar del Derecho de habitación, ya estudiado en su lugar correspondiente, y significa las dependencias particulares de una casa, destinadas a ser ocupadas por las personas para usos domésticos, o toda ella cuando no las tenga con otro destino." Enciclopedia Jurídica Española, tomo XVII, pág. 412.

"Habitación: Parte del edificio que está destinado para habitarse. Estancia, permanencia, residencia, morada." Diccionario Salvat.

"*Habitation: Place of abode; settled dwelling; residence; house.*" *Webster's New International Dictionary,* 1913, p. 967.

Parece, pues, que la mejor traducción al inglés de las palabras "casas para habitación" es la de *"dwelling houses" "for residence purposes."*

"*Dwelling house: A house occupied as a residence, in distinction from a store, office, or other building.*" *Webster's New International Dictionary,* 1913, p. 687.

En el caso de *Hartwig v. Grace Hospital,* 165 N.W. 827, citado por la corte inferior, se encuentra una situación parecida a la del presente caso. La cláusula restrictiva tenía el mismo objeto y el edificio sujeto al convenio se trató de extender y destinar a hospital, y la corte resolvió, diciendo:

"La restricción de que no se levantará ninguna edificación que no sea para residencia y relacionadas con las mismas en aquellos terrenos, queda violada al usarse un edificio haciéndosele o no ciertas adiciones para usarse como hospital, así como fabricando un edificio para ser usado como casa de vivienda de las enfermeras."

Asimismo en el caso de *Smith* v. *Graham, supra,* se interpretó igual restricción, tal vez más liberal en sus términos, y sin embargo, la corte se expresó así:

"Cuando se venden terrenos sujetos a ciertas cláusulas prohibiendo que en los mismos se lleven a cabo empresas comerciales o fabriles, así como la fabricación de edificios no dedicados a residencias, y hay una cláusula adicional en la escritura de enajenación de que el cesionario puede recibir y cuidar enfermos, así como efectuarles operaciones quirúrjicas en las casas fabricadas en dichos terrenos, no da derecho al cesionario a fabricar en los mismos un hospital, aunque aquél haya sido médico-cirujano por muchos años y haya designado su casa con el nombre de sanatorio, ya que un hospital es una cosa enteramente distinta a una casa de residencia."

Solamente el apelante cita el caso de *Carr* v. *Riley,* 198 Mass. 70, 84 N. E. 426. Aun cuando en este caso se interpreta lo que se puede entender por un establecimiento mercantil, las circunstancias que rodean al caso son distintas. La misma corte dice que el convenio es complicado. El caso es tán limitado por sus circunstancias, que no sería posible derivar de él principios para ser generalmente aplicados, máxime si cada caso ha de regirse por las condiciones peculiares del mismo.

Estamos, por tanto, de acuerdo con la corte inferior al concluir que la restricción fué violada por los demandados.

IV. Alega el apelante en su quinto motivo de error que la sentencia es indefinida y que debió ser más específica.

La parte dispositiva de la sentencia dice así:

"En el día de hoy, la Corte, por los fundamentos consignados en la opinión que se hace formar parte de esta sentencia, dicta sentencia declarando con lugar la solicitud de *injunction,* y en su virtud, ordena a los demandados que se abstengan de continuar utili-

zando la casa número 4 de la Avenida Olimpo, de Miramar, Santurce, . . . para fines de hospital o clínica.''

No creemos que haya dificultad para definir los términos de la sentencia. Las palabras ''clínica u hospital'' son tan de uso corriente que su significación parece conocerse por todos, especialmente para el demandado, Dr. Biascochea, a quien se le impone la prohibición de utilizar el edificio arrendado para tales fines. Todo lo que se refiera a asistir, tratar ó tener pacientes o practicar operaciones en el local No. 4 de la Avenida Olimpo, está comprendido en la sentencia de *injunction*.

V. El último error se refiere a las costas. Será suficiente decir que el presente caso es el de una temeridad manifiesta por parte del demandado. Este sabía, en primer lugar, por el registro de la propiedad que la casa No. 4 no podía destinarse a fines que no fueran residenciales. El, sin embargo, fué avisado por la demandante en los primeros momentos de haber arrendado dicha casa, de la existencia de la cláusula, y que la demandante se opondría a que allí se instalara una clínica u hospital y le invitaba a que cesara en sus propósitos. El demandado contestó, pero su carta más bien fué un reto al requerimiento amistoso de la demandante. La corte inferior, por tanto, ejerció correctamente su discreción al imponer las costas al demandado.

Por todo lo cual debe *confirmarse la sentencia apelada*.

El Juez Presidente Sr. del Toro no intervino en la resolución de este caso.