**CONTINENTAL PAPER BAG CO. et al. v. BOSWORTH. (Motion No. 6602.)**

(Commission of Appeals of Texas, Section B. Oct. 14, 1925.)

**1. Appeal and error ⬤⟿959(3)—Pleading ⬤⟿ 236(3)—Allowance of trial amendment within court's discretion not reviewable, in absence of abuse.**

Allowance of trial amendment at close of testimony before case goes to jury discretionary with trial court, and will not be reviewed, in the absence of abuse.

**2. Continuance ⬤⟿30—Allowance of trial amendment over objection that it would necessitate a continuance to obtain rebuttal evidence not reversible error.**

The allowance of a trial amendment over mere objection that it would necessitate continuance to obtain rebuttal evidence, held not reversible error.

**3. Insurance ⬤⟿435—Policy covering injuries in "store" held to cover injuries occurring in printing establishment used in connection with store business.**

Where testimony showed that printing of stock was a necessary and usual part of paper stock business, statement in liability policy that property on which insurance was effective was used for "store" and warehouse, and that assured conducted no business on premises, except "store" and warehouse, did not preclude recovery for injuries in printing establishment; as word "store," when used to designate place of business, given broad meaning, and may include in meaning a business establishment where personalty is kept, sold, and gotten into salable condition.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Store.]

**4. Appeal and error ⬤⟿143—Insurer impleaded by defendant insured has right to bring error, though defendant does not.**

Where insurance company was impleaded in a suit by defendant, it had right to have negligence questions examined by a writ of error, though original defendant had allowed such questions to become concluded against it by allowing affirmance of Court of Appeals to stand without applying for writ of error.

**5. Master and servant ⬤⟿315—Owner not ordinarily liable for injuries to servant of independent contractor.**

The owner of premises is not ordinarily liable for injuries to servant of independent con-

tractor arising in course of work that has been engaged.

**6. Master and servant ⬤⟿319—Failure to take precautions renders owner liable for injuries to servant of independent contractor.**

Where work contracted to be done by independent contractor is unusually dangerous in itself, unless precautions taken, because of circumstances caused by owner in first instance, the owner is liable for proximately resulting injuries to employees of independent contractor, though negligence of independent contractor may contribute thereto.

**7. Master and servant ⬤⟿332(4)—Evidence held to sustain court's explanation as to duty of owner to employee of independent contractor.**

Evidence held to support explanations given by trial court on duty of owner toward employee of independent contractor.

**8. Master and servant ⬤⟿329—Proof of one act of negligence which is proximate cause of injury sufficient.**

Where negligence of master is charged, rendering it liable to employee of independent contractor, proof of one act of negligence which as the proximate cause of the injury is sufficient.

**9. Insurance ⬤⟿514—Judgment against insurance company held to substantially comply with its liability under clause in policy.**

Where judgment against insurance company provided that insured could not collect until after it had first paid judgment in suit against itself, such judgment substantially complied with clause in policy that no recovery against it could be had by insured until it had first been sued and had paid judgment in such suit.

**10. Insurance ⬤⟿514½, New, vol. 11A Key-No. Series—Judgment for attorney's fees for failure to defend action against insured held proper.**

Under policy providing, first, for loss from liability imposed by law on insured, and, second, to defend any suit against insured, a judgment for attorney's fees for failure to defend action against insured is proper, though such fees had not been paid.

Error to Court of Civil Appeals of First Supreme Judicial District.

On motion for rehearing. Motion overruled.

For former opinion, see 269 S. W. 83.

Baker, Batts, Parker & Garwood, and Guy Graham, all of Houston, for plaintiffs in error.

Presley K. Ewing, of Houston, for defendant in error.

SHORT, J. The motion for rehearing is very able.

[1, 2] It is contended that the ruling upon the allowance of the trial amendment is too strict as to practice. However that may be, the decision of a trial court in permitting the filing of a trial amendment to the plead-

---

ings before the case goes to the jury is discretionary, and will not be reviewed, in the absence of an abuse of discretion. No such abuse is shown in this case. The fact that the objection against the amendment was accompanied by a statement that it would necessitate a continuance could not show that a continuance was necessary. None was asked, and no grounds were shown, even informally, why one should be granted. The allowance of an amendment over the mere objection that it will necessitate a continuance to obtain rebuttal evidence is not reversible error.

[3] A second ground of the motion is that the policy sued upon covered only a store and warehouse, whereas the injury in suit was occasioned by printing machinery.

The policy contains as one of the "conditions" of liability to assured the provision that it is issued "in consideration of the premium charged therefor and of the statements" which are attached and which the assured warrants to be true by the acceptance of such policy. Among these latter are statements that the assured is a paper bag company; that the premises in which the insurance is effective "are used for the purposes" of "store and warehouse"; and that the assured "conducts no business on the premises except * * * store and warehouse."

At the time of the policy, the assured had no printing establishment or machinery in this place, but was having its product labeled at a shop of a third person. Subsequently, without notice to the insurance company, it installed in these premises printing machinery for that purpose, and because of this move the injury in suit occurred and liability of insurer is claimed.

All of the evidence upon the point of whether such an addition was within the general description of "store and warehouse * * * purposes" and "business" is from one witness, who was in that occupation, and the manager of assured:

"The printing of bags and paper to fill our orders, and the maintenance and operation of a place for the purpose of printing, was a necessary, usual, and customary part of a paper store business as conducted by the Continental Paper Bag Company of Texas, and that is true, not only for our business, but of similar stores."

In American usage, the word "store," when employed to designate a place of business, is a broad one. It signifies not merely a warehouse, storehouse, or storeroom, but may include in its meaning a business establishment where personalty is kept and sold, and incidently gotten in salable condition.

Burglarizing a banking house has been held to be committing the crime in a store, shop, or warehouse (Wilson et al. v. State, 24 Conn. 57); entering a store, that of entering a shop (Louisiana v. Moore, 38 La. Ann. 66); the right to tax a shop or store, that to tax the office furniture, fixtures, and pledges of a pawnbroker's establishment (Boston Loan Co. v. Boston, 137 Mass. 332); and a representation that an insured building is to be used for stores has been held not to be breached by the fact that the building contained a bakery, restaurant, and oven (Richards v. Washington F. & M. Ins. Co., 60 Mich. 420, 27 N. W. 586). A person who mends watches in a jewelry store or operates a candy pulling machine in one dealing in confections would be entitled to a lien under a statute applicable to stores, shops, etc. R. S. art. 5644.

These considerations demonstrate that the meaning of the word is quite broad, and frequently includes analogies and incidents. In dry goods stores are often found artisans who do alteration and repairs, such as dressmakers, tailors, and shoemakers, and who have their machines for the purpose; in drug stores are pharmacists who frequently, by aid of utensils and machinery, prepare and shape the medicinal output of the establishment; in grocery stores, persons who roast and grind coffee and weigh, slice, and parcel out articles of food by means of machinery; and in almost any sort of a store is some department which, with mechanical aids, prepares what is sold for delivery. Each merchant using paper bags and the like ordinarily, as shown by evidence in this case, has something peculiar to his own business printed on them; and, if the seller attends to this, until a buyer comes, what words or devices are needed cannot be known. It may be convenient and conducive of trade to have this necessary adjunct of sale present. If, as the testimony shows, the printing of its stock was a necessary and usual part of a paper store business, then the statement in the policy in the present case was easily true, and the Supreme Court must accept the approval of such evidence by the courts below.

[4] Another contention of the insurance company is that the original opinion is in error in failing to examine the negligence questions in the case. The former opinion viewed these questions as closed because the original defendant has allowed the affirmance of the Court of Civil Appeals to stand against it without applying for writ of error. They are, indeed, concluded as to that defendant, but the motion for rehearing and further consideration of the record show that they are not as to the insurer.

The injured person having sued the defendant, the latter brought in the insurance company, and, while, as noted and acted upon in the opinion, it did not become a party to plaintiff's suit, it in its own behalf purely made complete defense both by its answer and during the trial, as it had a right to do certainly after it was in, since its own liability would be defeated if plaintiff's suit was, and the policy entitled it to notice of

suits (Washington, etc., Co. v. District, 161 U. S. 316, 16 S. Ct. 564, 40 L. Ed. 713), so that it had a right to appeal from adverse judgment in that respect, as it did, and to have those questions examined on writ of error (Weems v. Watson, 91 Tex. 35, 40 S. W. 722; Cleveland v. Shaw [Tex. Civ. App.] 119 S. W. 883). This necessitates the examination of the negligence questions.

It is conceded that the printing company was an independent contractor in every sense, and that to it was furnished by the paper bag company the space and machinery with which to do the work. The space was too narrow to separate the equipment sufficiently to avoid the occurrence that caused the injury in suit. The contractor undertook to arrange the machines, but could not have done so in a manner to avoid like occurrences to some of its employees. This occurrence was the emission of hot particles of metal from the sawing machine toward the printing press upon which the plaintiff was working, whereby one of the pieces entered her eye, raising a blister upon it, and causing the loss of its sight. The saw machine threw out such particles of metal naturally and necessarily in the course of the work. While the paper bag company furnished a hood to prevent this, and while in some of the work it could thus be prevented, in practically all of it, because of the absence of a certain attachment called a carriage, the hood could not be used. There is evidence that in this character of printing the use of the hood was usually and customarily eliminated:

"That machine in practical operation was a machine that had no hood. * * * We could not use what came with it. Under those circumstances there was not any device to catch these pieces of flying metal. * * * With a machine constructed as this machine was, it is not customary to use the hood in the work."

The paper bag company furnished no other screen to arrest the stream of hot, metal, sawdust. It was customary for printing plants to use such a screen. The injury occurred while the hood was not being used, and it was not shown whether the piece of work, at that time on the saw, would have permitted its use.

The court explained to the jury that the paper bag company owed the duty "to exercise ordinary care to furnish" such place and machines for the contracted work as were reasonably safe when used as such employer intended or might reasonably have expected," and, likewise, "if the work * * * as contemplated to be done should be so inherently or intrinsically dangerous that injury would probably be occasioned thereby to the contractor's employees in the course of their service in doing such work, unless proper precautions were taken, then it would be the duty of the * * * owner * * * to exercise ordinary care to take such proper precaution." These explanations were objected to because without support in the evidence.

In accordance with them, the jury found that the machine in operation was so intrinsically or inherently dangerous as to make the injury probable, and that it was the proximate result of each of two elements of negligence—furnishing too little space under the circumstances and failure to furnish a screen or similar device to arrest the sparks. The jury, moreover, found that the machine was so constructed as not to be suitable, or reasonably safe for the work, as the paper bag company knew, or in the exercise of reasonable care would have known, and that this fact was also a proximate cause of the injury. The issues calling for these findings are challenged because not based upon evidence.

There were objections, not now insisted upon, and apparently untenable, that the pleadings did not justify the explanations and issues; but the real complaint of the insurer is that there was no evidence, and, where the rule is applicable, that under the law regarding independent contractors the acts and ommissions causing the loss of plaintiff's eye were, in the state of the proof, those of the contractor and not those of the paper bag company or attributable to it.

[5, 6] Ordinarily an owner of premises is not liable for injuries to an independent contractor's servants in the course of the work that has been engaged. But impracticable methods cannot reasonably be assumed to be within the contemplation of the parties, and, where, as shown by some of the evidence in this case, it is proved that the work under circumstances caused by the owner in the first instance is, as a practical and ordinary matter, unusually dangerous of itself, unless proper precautions are taken, the owner is liable for proximately resulting injuries. They are thus attributable to his own acts and omissions, and he is responsible for them, although the contractor's negligence may contribute to them. Work that is not dangerous, if properly done, is to be distinguished from work, as here, that is dangerous, unless proper precautions are taken; and collateral negligence of the contractor in the manner of his performance is to be distinguished from that arising by reason of the very work for which the owner has contracted. Cameron, etc., Co. v. Anderson, 34 Tex. Civ. App. 105, 78 S. W. 8; Id., 98 Tex. 159, 81 S. W. 282, 1 L. R. A. (N. S.) 198; Wilson v. Crutcher (Tex. Civ. App.) 176 S. W. 625; North American Dredging Co. v. Pugh (Tex. Civ. App.) 196 S. W. 255; Jacobs v. Fuller, 67 Ohio St. 70, 65 N. E. 617, 65 L. R. A. 833, and note.

[7, 8] There was evidence, appearing from what has already been summarized, that the place and machines furnished by the paper bag company were not reasonably safe when

used as intended or to be reasonably expected; that the work was inherently dangerous; and that the injury was the proximate result of negligence in those respects. If so, the explanations given were supported by evidence; and at least one of the elements of negligence involved in the case and constituting a proximate cause of the injury was likewise sustained, from which it results that no reason for reversal is apparent. Andrews v. Wilding (Tex. Civ. App.) 193 S. W. 192.

[9] The remaining ground of the motion for rehearing is that a clause of the policy forbade recovery against the insurance company by the insured paper bag company until it had first been sued and had paid a judgment in the suit.

Both parties are in error in thinking that the opinion construed this clause. It avoided a construction of it by holding that, even though the insurance company's contention be conceded, this judgment for $5,000 amounted to the same thing, and no harm was done by it, since, according to its wording, the insured could never collect from the insurer until after it had first paid the judgment in the suit against it. Whatever criticism as to conclusiveness may be made of such a judgment—and that question has not been argued ·and is not passed upon—it at least works no injury to the insurer. The purpose of the clause certainly is not to impose trouble and expense upon the insured, and every reasonable end of it will be attained as well under a judgment of this sort as by a judgment in a separate suit, and with greater justice to the insurer, since in a separate suit the insurer might not be able to get into negligence questions at all, and would go to additional trouble and expense. See Southwestern Surety Ins. Co. v. Thompson (Tex. Civ. App.) 180 S. W. 947. No error is assigned on the ground of misjoinder, and opinion upon that subject is not required.

[10] The judgment against the insurer was, however, not conditional as to $200, interest upon that sum and such costs of court as were payable by the paper bag company. This $200 was equal to the reasonable obligation already incurred by the insured, but not as yet paid, in defending the suit which in its behalf the insurer refused to defend. The question now presented is whether this sum, which was clearly an element of the damages for the company's breach of contract to defendant, was recoverable, in view of the fact that the assured had not yet paid the attorney's fees. There are two obligations in the policy, and one of them is to defend.

The parts of the contract bearing upon this question had better be quoted. The company agrees by them:

"(1) To indemnify * * * the assured against loss from the liability imposed by law upon the assured, for damages ᛫ * * * suffered * * * by any person," etc.

"(2) To defend in the name and on behalf of the assured any suit brought against the assured to enforce a claim whether groundless or not, for damages * * * suffered by any person," etc.

"Subject to the following conditions: [Then follow clauses A to L, which need not be set out, and then clause K].

"K. No action ·shall be brought against the company under or by reason of this policy unless it shall be brought by the assured for a loss, defined hereunder, after final judgment has been rendered in a suit, described hereunder, and within two·years from the date of such judgment, to wit, for a loss that the assured has actually sustained by the assured's payment in money (a) of a final judgment rendered after trial in a suit against the assured; (b) of the expenses (excluding any payment in settlement of suit or judgment) incurred by the assured in the defense of a suit against the assured. [Then follow clauses L to Q, which need not be set out.]

"R. * * * The expenses incurred by the company in defending any suit, including the interest on any verdict or judgment and any costs taxed against the assured, will be paid by the company irrespective of the limit" of the liability under the policy, that is, $5,000 as to each injured person. [Then follow clauses S to T, and other matters not necessary to quote.] ᛫

The contract to defend .is, as indicated, subject to a number of "conditions." Some of the matter put under the description of "conditions" is not in any respect conditional; some of it is. If the quoted no action clause is of this latter description, it is so only as a condition subsequent. A provision that the expenses of defending will only be paid after judgment plainly. cannot be a condition precedent or concurrent with an obligation to defend the suit before judgment. And it must also be kept in mind that the wording of the policy does not in this respect seek to make any provision that shall apply in case of a breach of the contract by the insurer. Performance, not breach, is in contemplation.

There is no controversy but what, in this case, before trial, the company breached its duty to defend, and consequently caused the assured to incur this expense, to its damage. Since it was first in default, it was not thereafter in a position to require further performance or compliance by the other party under the terms of the contract that it had thus repudiated; it could not require as a qualification of recovery upon its already accrued liability that the assured thereafter pay out money, as it says the assured agreed to do in the contract. St. Louis, etc., Co. ᴠ. Maryland Casualty Co., 201 U. S. 173, 26 S. Ct. 400, 50 L. Ed. 712; Royal Indemnity Co. v. Schwartz (Tex. Civ. App.) 172 S. W. 584; Western Indemnity Co. v. Walker, etc. (Tex. Civ. App.) 203 S. W. 93; Mathews v. Caldwell (Tex. Com. App.) 258 S. W. 810.

The insurance company contends, however, that, if it had come in voluntarily, it would have run the risk of incurring liability for the principal amount by reason of that very move. Surely, though, it would not absolutely have so laid itself liable in such an event, because, if it should have succeeded in defeating the suit, both it and the assured would have escaped the injured person's demands. And, too, if it should have been of the opinion that the claim was not of the class protected by its policy—for instance, did not occur in the covered premises—and should therefore have refused to defend, and it should truly have turned out that its opinion was correct, it would not be liable, under the wording of this policy, for either the principal amount or for any of the expenses. Some risk in these respects it was paid to take. There is no unfairness in the ruling that has been made, because both in the making of its contract and in its action in pursuance of it the company could have protected itself from any unreasonable hurt.

The judgment for interest on the $200 was incident to the recovery of that amount, and hence properly went with it.

The costs were a part of the damages for breach of the defense clause, as will be seen by consulting the provisions of paragraph R that have been quoted. While these costs were not, and manifestly could not, have been completely alleged, and the suit as to them may have been in part premature, still they were charges within the knowledge of the court and within the prayer, and were mature at the time the judgment was entered. No harm has been done by their award.

A motion for mandate by plaintiff is covered by the recommendation, which is that the motion for rehearing be overruled.