## HUMBLE OIL & REFINING CO. v. BELL et al.

### No. 4333.

Court of Civil Appeals of Texas. El Paso.

Nov. 12, 1943.

Rehearing Denied Jan. 6, 1944.

See, also, 172 S.W.2d 800.

K. W. Gilmore, of Houston, and Henry Russell, of Pecos, (E. E. Townes and R. E. Seagler, both of Houston, of counsel), for appellant.

John J. Watts, of Crane, and A. R. Grambling, of El Paso, for appellees.

PRICE, Chief Justice.

This is an appeal from a judgment of the District Court of Crane County by the Humble Oil & Refining Company. Francis Bell, as plaintiff, sued the Humble Oil & Refining Company to recover for personal injuries alleged to have been inflicted on him through the negligence of said Company. The Ocean Accident and Guaranty Corporation, Ltd., was granted leave to intervene as having paid to plaintiff Bell, under a Workman's Compensation Insurance policy issued by it to Lee Hancock, the sum of about $5,000 for the same injury plaintiff sought to recover for against the Oil Company. On the verdict judgment was rendered against the Humble Oil & Refining Company in the sum of $25,000, approximately $5,000 thereof in favor of the Insurance Company and the balance to Bell.

For convenience, the parties will be hereinafter designated as "plaintiff," "intervener," and "defendant."

It was alleged by plaintiff that he was the employee of Lee Hancock; that Hancock was an independent contractor constructing a slush pit for defendant on a lease of defendant's in Yoakum County. In the construction of the pit it was necessary to blast caliche; that Hancock employed one O. M. Hodges to perform this work; Hodges, with one of his own employees and one furnished by Hancock, did this work on or about 10:30 A. M. on April 22, 1940; that in doing this work about seventeen different holes were prepared in the floor of the pit and two or more sticks of dynamite were used in each hole; when the blast was set off all of the dynamite did not explode; that on or about the night of April 23rd, 1940, while plaintiff, with the consent and procurement of the responsible employee of the defendant, was acting as night watchman of property adjacent to the property, the night being cold and no shelter being provided, he entered the pit, lighted a fire to warm himself, and the unexploded dynamite left in the pit aforesaid exploded, inflicting personal injuries on him.

Negligence was charged against defendant. Among the grounds was breach of the alleged duty to use ordinary care to furnish a safe place to work owing him as an employee of Hancock on the premises as an invitee of defendant; that defendant knew, or should have known, of the probable or possible presence of the unexploded dynamite and failed to warn him thereof; that

the dynamite in the pit was inherently dangerous, and it was the duty of defendant to see after same was used that no unexploded dynamite remained therein, a failure to do so constituting negligence insofar as plaintiff was concerned; a negligent failure to inspect the pit after the blasting; that in the exercise of ordinary care defendant should have discovered the presence of the unexploded dynamite; further, that defendant assumed control of the work of Hancock.

Defendant answered by general denial, specially plead contributory negligence and various other special defenses.

The judgment is based on the following findings by the jury: That plaintiff, on the date of the accident, was an employee of Hancock; that on that date he was not an employee of defendant; that in the exercise of ordinary care defendant, prior to the accident, should have discovered the presence of the unexploded dynamite in the pit and was negligent in failing so to do; that such negligence was a proximate cause of the injury; that the defendant was guilty of negligence in failing to remove the dynamite prior to the accident; that such negligence was a proximate cause of the injury; that prior to the accident defendant had accepted the pit; that same was not in control and possession of Hancock at the time of the accident; in favor of plaintiff on all grounds of contributory negligence submitted.

At the close of the evidence defendant moved for an instructed verdict, which was denied; thereafter, after the verdict was returned, filed motion for judgment non obstante veredicto, which was likewise overruled, and thereafter in due time filed motion for a new trial.

Defendant predicates this appeal on ten points of error, six urging that as a matter of law it was entitled to an instructed verdict; the other four assign trial errors.

Basic of the duties owed to plaintiff by defendant was the relationship between them. Plaintiff plead that his presence on the premises of the defendant was that of an invitee, with the knowledge and at the special instance of the defendant, but as the employee of the independent contractor Hancock, "and one Henry Ingram, superintendent for said Lee Hancock later ratified employing of said plaintiff and said Lee Hancock remained on the job at all times so as to retain control over the said plaintiff as to the details of the work."

The jury found that at the time of the injury plaintiff was the employee of Hancock. The intervener acted upon that assumption and assumed liability under the Workmen's Compensation Law. Plaintiff, it is fair to assume, made claim against intervener under that law. Plaintiff's case as plead bases the duty owing to him on the alleged fact that he was on the premises as the employee of Hancock.

If on the premises of defendant as an employee of the independent contractor, the defendant owed plaintiff the duty of ordinary care to avoid injury to him. It was liable to him for the negligent acts or omissions of itself or its servants. While plaintiff was so upon the premises defendant was under the duty to exercise ordinary care to avoid injury to him.

It is likewise elementary that an owner having work performed on his premises by an independent contractor is not ordinarily liable for injury caused to an employee of such contractor by the contractor's negligence or the negligence of a fellow employee, negligence on the part of the owner not contributing thereto.

There are exceptions to the general rule that an employer is not liable for the negligent acts of his independent contractor and the employees of such contractor. Cameron Mill & Elevator Co. v. Anderson, 34 Tex.Civ.App. 105, 78 S.W. 8; Id., 98 Tex. 159, 81 S.W. 282, 1 L.R.A.,N.S., 198; Continental Paper Bag Co. v. Bosworth, Tex.Com.App., 276 S.W. 170.

In many respects the evidence in this case is undisputed. There is a dispute as to inferences to be drawn from the facts.

Defendant entered into a contract with Lee Hancock to do certain dirt work incidental to the drilling for oil on a lease owned by it near Denver City, in Yoakum County. Included in the work was the digging of a slush pit, a reserve pit, and the digging of holes for the anchor of the guy wires of the derrick. The contract was in writing; as a matter of law, the relationship created by that contract was employer and independent contractor. There is no dispute between the parties as to this. Hancock started the performance of the contract and plaintiff was hired by Hancock as a driver of teams. In the course of the excavation of a slush pit caliche was encountered and it was necessary to disintegrate same by blasting. Ingram, the superintendent of Hancock, employed Hodges

to do this work, furnishing him a helper. Hodges was perhaps an independent subcontractor of Hancock. Hodges, with this helper and an employee of his own, drilled seventeen holes within the pit, loaded each hole with two or more sticks of dynamite and connected one of the sticks of the dynamite in each hole to a wire attached to a battery. The blast was set off by an electric current from the battery. After the blast was set off the bottom of the pit was plowed with a plow drawn by four horses or mules. Then the loosened earth and caliche were removed from the pit with a fresno pulled by four horses or mules. Before this work was done, it does not appear what, if any, inspection was made by Ingram, the superintendent for Hancock, or Hodges, to ascertain if all the dynamite had been exploded. The blast was set off about 10:30 o'clock A. M. on April 22, 1940. The plowing and fresno work immediately followed.

From the evidence it is reasonably established that there remained unexploded dynamite in the pit placed there by Hodges. We think, likewise, it is a fair inference from the evidence that defendant had notice that it would be necessary for Hancock to use dynamite in the performance of his contract for the construction of the slush pit.

Joe Rose was transportation superintendent for defendant in this area. In the scope of his duties was to see that the necessary equipment and material were placed on the ground in proper proximity to the preliminary work for the drilling of the oil well; further, it was his duty to see that Hancock's work under his contract was performed in accordance therewith. While the preliminary work was progressing Rose caused considerable of the contemplated material and equipment to be placed on or near the site of the proposed well. While Hancock was pursuing his work, from time to time Rose came to the site thereof. There is no evidence that he was present at the time when the holes were drilled for the blasting or at the time the blast was set off. However, we think that at the relevant time the evidence is sufficient to raise the issue that Rose had notice that the pit had been blasted with dynamite.

At about 5 P. M. on the 22nd day of April, 1940, Rose came near the slush pit at or just about the time Hancock's employees were quitting work. The plowing and fresno work referred to above had at that time been performed. He accosted plaintiff and spoke to him about watching the lumber and equipment defendant had on the premises. In the conversation he manifested an intention in no way to interfere with plaintiff's duty as an employee of Hancock, and directed him to obtain the consent of Hancock's foreman before going to work. Plaintiff agreed to act as such night watchman, and that night acted as such. The evidence is not clear as to just how long he acted as such before the accident occurred. It does appear that before the accident he spoke to Ingram about the matter, who directed him to continue the work until he or Rose directed him to stop. The evidence is not clear as to what equipment, if any, belonging to Hancock was on or near the premises.

No shelter was provided for a night watchman on the premises where it was contemplated plaintiff should remain during the nighttime. As has been stated, the evidence does not clearly show just what night plaintiff was injured. In any event, it was within two or three days after his commencing to work as night watchman. The night of the injury was cold and windy. Plaintiff gathered some wood or ends of boards, entered the slush pit and started a fire near the center of the pit to warm himself. In a very short time there was an explosion causing painful, permanent, disabling injuries to plaintiff.

The fire was started on or near a hump in the floor of the pit. This hump was about the size of a lawyer's large brief case. The hump had been made smooth by the passage of the fresno over same in the course of the fresno's work aforesaid. The only evidence that Rose, the agent of defendant in charge of the work, knew of the existence of this hump is that he was in such proximity to the pit and so situated with reference thereto on the afternoon of April 22nd that there was nothing to prevent his observing same; further, that from time to time he had been around the work or in the neighborhood thereof after the hump existed. Plaintiff testified that humps were frequently allowed to remain in the bottom of slush pits. Rose testified that he was unacquainted with the technique of handling dynamite in blasting, though he knew blasting was frequently resorted to in the excavation of slush pits. Further, if plaintiff was an employee of defendant he was covered by a workman's compensation policy taken out by defendant.

974

■ Basic to the judgment herein was the finding that defendant was guilty of negligence in failing to discover the presence of the unexploded dynamite. The dynamite was not placed in the pit by defendant. This blasting, while done for defendant, was done by an independent contractor. Defendant had no right to control the manner in which it was done. When it was done, the independent contractor had charge of the pit. Ordinary care would entail on those doing the blasting an immediate inspection to ascertain if all the dynamite was exploded. It was contemplated that following the blasting, work should be done in the pit that the presence of unexploded dynamite therein would render highly dangerous. This work was done. The plowing with the four-horse plow and the fresno work would be reasonably calculated to disclose the presence of any unexploded dynamite.

■ It could hardly be plausibly argued, we think, that defendant was under any obligation to plaintiff to inspect the pit for the presence of unexploded dynamite before Hancock completed same. At that time defendant had no reason to foresee that plaintiff might be injured.

■ The jury found that prior to the accident defendant had accepted the pit. This finding is assailed by defendant as being without evidence to sustain same. If there be evidence sustaining such finding, it must be found in the circumstances that there is no evidence that Hancock ever did any other work on the slush pit after the afternoon of April 22, 1940. The reserve pit was not completed until after plaintiff's injury. There is wanting evidence of any express and definite acceptance of the pit before the date of plaintiff's injury. In our opinion the evidence was insufficient to sustain the finding. However, the finding on this issue is not deemed necessarily vital to the ultimate issue.

■ Unless notice of the fact that dynamite had been used in the excavation of the pit, coupled with the knowledge of the fact of the existence of the hump in the pit, gave rise to a duty of defendant to inspect to ascertain if unexploded dynamite still remained in the pit, we can see no possible basis for such a duty to plaintiff. Nothing other than this gave defendant any notice of any condition of danger to plaintiff on the premises. Plaintiff's opportunities were as great at least as those of de-

fendant to know the condition of the pit in this respect. The dynamite remained after the plowing and fresno work.

If Rose is to be charged with notice as to the existence of the hump, it must be coupled with the fact that he knew the plowing and fresno work had been done in the pit. Men conversant with the danger of dynamite, who presumably saw and knew of the use of the dynamite conducted the operations in the pit calculated to disclose the fact,—worked there when their safety would be greatly jeopardized thereby. Such work was performed by them without injury and failed to disclose the presence of the dynamite. The hump remained, but, according to plaintiff's own testimony, this was not unusual in a completed slush pit.

The possible presence of unexploded dynamite is the only basis calling for an inspection on the part of the defendant. It was plaintiff's employer who had caused the dynamite to be there. We hardly believe under the circumstances here appearing it was defendant's duty to inspect the pit for unexploded dynamite. In the first place, in view of the duties plaintiff was called upon to perform as night watchman, dynamite in the pit would ordinarily be of small danger to him. Under ordinary circumstances there would have been no occasion for plaintiff to enter same. We do not want to be understood as holding that plaintiff did not have a right to start the fire in the pit. If in fact defendant had knowledge of the unexploded dynamite in the pit, there would be a different question of liability presented here.

We hold there is not sufficient evidence that defendant had notice of the probable or possible presence of the unexploded dynamite in the pit. In our opinion, in the absence of such notice it was not called upon to make an inspection. It is true that Paul W. Moore testified that the existence of an unbroken hump in a slush pit which in the course of its construction had been dynamited, would cause him to suspicion the presence of unexploded dynamite. Paul Moore was specially skilled in the use of this explosive. There is no evidence that the employee of defendant had any such knowledge. In fact all the evidence on the point is that he was not skilled in the use of dynamite.

If Rose had actual notice—that is, knowledge—of the presence of the dynamite in the pit, an entirely different question would be presented. If such were the case, it

might be plausibly argued that he subjected one lawfully on the premises of his employer to an undue risk. This is not the case, however. The judgment here is predicated on the finding that he failed to use ordinary case to discover and remove the dynamite. Stated abstractly, the question to be determined is, whether the owner is under a duty to an employee of an independent contractor to use ordinary care to discover a dangerous condition brought about by the negligence of such independent contractor or his employee.

Plaintiff urged that the work contemplated was inherently dangerous, and that defendant was liable for the mode of performance; that in some cases where the performance of work is necessarily dangerous, jeopardizing the persons or property of others, unless proper precautions are taken, an owner cannot escape liability therefor by trusting same to an independent contractor. This principle is set forth in the following cases: Cameron Mill & Elevator Co. v. Anderson, supra, and various other authorities.

A perusal of the authorities will disclose that in none of them was the duty held to be owing to the employee of the independent contractor. The case of Continental Paper Bag v. Bosworth, Tex.Civ.App., 215 S.W. 126, Id., Tex.Com.App., 269 S.W. 83, Id., Tex.Com. App., 276 S.W. 170, in some measure supports plaintiff's contention. In that case, however, the owner was under obligations to furnish part of the machinery at least with which the work was to be performed. The machinery so furnished was not reasonably safe, as furnished. Further, the space provided by the owner, considering the nature of the work contemplated, was not sufficient that the work contracted for by the independent contractor could be performed with reasonable safety. Under such circumstances, recovery was sustained against the owner. The work was not on a place, but required to be performed in a place furnished by the owner to the independent contractor where it would not be performed with reasonable safety. In short, the work was rendered peculiarly dangerous on account of conditions brought about by and known to the owner. It was his negligence he was held liable for and not that of the independent contractor.

Strong reliance is placed upon the case of West Texas Utilities Co. v. Renner, Tex.Civ.App., 32 S.W.2d 264; Id., Tex.

Com.App., 53 S.W.2d 451. Here, again, the dangerous situation was not brought about by the acts of the independent contractor. It existed and was maintained by the employer of the independent contractor.

In the case of Montgomery v. Houston Textile Co., Tex.Com.App., 45 S.W.2d 140, the injury arose from the negligent act of the owner while the independent contractor was working on the construction.

■ Let us assume, as contended by plaintiff, that the use of the dynamite by Hancock was reasonably contemplated by defendant; further, that plaintiff was on the premises doing the work of his employer Hancock. This latter assumption is the assumption of plaintiff. If there in any other capacity, he was as an employee of defendant, and to such a relationship different legal principles would apply. Let it be assumed also that the work of blasting was inherently dangerous. With these assumptions let us determine the measure of duty owed by defendant, at all times bearing in mind its relationship to plaintiff. In regard to the liability to the employer of an independent contractor where the work contracted for is inherently dangerous, the rule is that the employer may be held liable to a third person for the negligence of the independent contractor in the performance of such work. This, even though the employer be guiltless of negligence.

Is an employee of an independent contractor a third person within the meaning of the rule? It is our opinion that such employee is not.

In discussing the subject of blasting by an independent contractor and the liability of his employer therefor, 14 R.C.L. p. 95, states the rule as follows:

"The rule imposing liability on the employer is for the protection of third persons, not for the protection of the contractor's servants, and the latter cannot hold the employer responsible for the contractor's negligence in blasting in a municipal street, solely upon the theory that the work was a nuisance or was intrinsically dangerous."

In the opinion in the case of Simonton v. Perry, Tex.Civ.App., 62 S.W. 1090, 1091, it is said:

"It may be true that if a person employs a negligent or reckless contractor, knowing his character, and in the performance of

his contract he negligently or recklessly injures a third person, a cause of action might arise against the owner; but this rule cannot be applied as between the owner and the servants of the contractor."

We see no reason why the rule should be different, even though the work be inherently dangerous, where a negligent act or omission of the contractee does not increase the danger thereof. Furthermore, to such an employee the contractee does not owe the duty to exercise ordinary care to protect the servant of the contractor from the risk arising from the negligence of the contractor. Simonton v. Perry, supra; Proctor v. San Antonio St. R. Co., 26 Tex.Civ.App. 148, 62 S.W. 939, writ refused; Southern Oil Co. v. Church, 32 Tex. Civ.App. 325, 74 S.W. 797, 75 S.W. 817, writ refused.

We cannot see that a contractee owes any greater duty to the employee of the contractor by reason of the fact that such employee is on the premises by the express invitation of the contractee rather than by an implied invitation.

Negligence is the performance or omission of some act in violation of legal duty. The dangerous situation here was brought about not through negligence of the defendant. It arose from the manner in which the independent contractor performed the work. It was not a duty owed by defendant to plaintiff, on the premises as an employee of Hancock, to inspect the work in order to insure his safety. Defendant was not held liable on the theory that its employee did know of the actual condition. Its liability was predicated on the finding of fact that it should have known of the condition by the exercise of ordinary care. In short, that defendant owed a duty of exercising ordinary care to guard plaintiff against the negligence of the independent contractor.

Before one may be charged with the notice imputed by a failure to exercise ordinary care, there must be a legal duty to exercise such care in the premises. Hailey v. Missouri, K. & T. R. Co., 70 S.W.2d 249, writ refused.

It is contended here that defendant directed the work of the contractor and assumed control thereof. This contention is not supported by the evidence. Further than indicating where the work was to be done under the contract, there is no evidence that the employee of defendant made a suggestion as to the manner in which the work should be performed. The contract between Hancock and the defendant contains this provision:

"To do such work, principally teaming and dirt work, as may be requested from time to time by Humble superintendents or other authorized representatives in the West Texas Division."

At the time the transaction occurred between plaintiff and the representative of the defendant, the situation was about as follows: Hancock had not completed the contract. The presence of Hancock's employees on the premises was necessary to that end. Defendant had placed property on the ground to begin the operation of drilling the well as soon as Hancock finished his work. In this situation Rose called upon Hancock to place a watchman on the ground. It is true that he first spoke to plaintiff as to the matter, but plaintiff was not to do the work except by the consent of Ingram and, we think, under the direction of Ingram. It is undisputed that Ingram, before the injury, had directed plaintiff to continue as night watchman until he was notified to cease.

Considering the situation, we believe the work came under the clause of the contract hereinbefore quoted. It was fairly incidental to the work called for in the contract. It might be additional work, but this does not change the relationship between defendant and Hancock. Hancock, through his employee, was guarding defendant's property during the progress of the performance of his contract. In doing this he was an independent contractor. This being the case, defendant did not owe plaintiff the duty to use ordinary care to discover the negligence of Hancock in order to protect him therefrom.

In the cases of Amacker v. Skelly Oil Co., 5 Cir., 132 F.2d 431, and Crow v. Continental Oil Co., 5 Cir., 100 F.2d 292, the employer assumed control of the work. In the former case the employees were under the supervision and control of the Skelly Oil Company; in the latter, at the instance of the employer, the independent contractor was doing work for the employer in no way connected with his contract. In each case the relationship of the contractee to the plaintiff therein was analogous to that of master and servant.

In considering this case we have assumed, in accordance with the contention of plaintiff, that the work called for in the con-

tract was inherently dangerous. There appears small basis for this assumption. Under the evidence there is no showing that the blasting in the manner contemplated would unduly endanger the person or property of third persons. It was not the work called for that caused the injury but the manner of the performance thereof.

As has been stated, the theory of plaintiff's pleading was that at the time of the injury he was the employee of Hancock, actually subject to his direction and control. Plaintiff's own testimony strongly supports the theory that he was an employee of the defendant. Under his testimony plaintiff was not a casual or loaned employee, but there was a subsisting contract of employment between plaintiff and defendant. His testimony on this point was very direct and unequivocal. If an employee, plaintiff would not be entitled to recover here. Defendant was insured under the Workmen's Compensation Act, and plaintiff's rights would be defined and limited by that Act. Sec. 3, Art. 8306, R.S. 1925.

The evidence seems to have been fully developed and fails to disclose liability on the part of defendant.

The case is reversed and here rendered in favor of the defendant.

WALTHALL, J., not sitting.