

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

March 7, 1947

Hon. Alfred M. Clyde
Criminal District Attorney
Tarrant County
Fort Worth, Texas

Opinion No. V-76
Re: Construction of Art. 1111-d,
Chapter Eleven, A, Vernon's
Penal Code.

Dear Mr. Clyde:

Your request for our opinion on the above captioned matter has been received by this Department. We quote from your letter as follows:

"It is the desire of this office to obtain an opinion from your office on the construction of Article 1111-D, Chapter A, of the Penal Code of the State of Texas, as to whether or not this Article applies to the following state of facts:

'A concern, situated here in Fort Worth, known as "Blue Bonnet Discount Stamp Company", sells their stamps to merchants throughout the State of Texas, who, in turn, give the stamps to customers. When the customer completes a book which is given by the Blue Bonnet Discount Stamp Company to place stamps therein, the customer, in turn, can present the book or books of stamps to the Blue Bonnet Company; and they, in turn, will give merchandise to redeem the book or books presented by the customer. This company does not sell merchandise, but is engaged only in the business of redeeming the stamps heretofore mentioned.'

'The question is: Whether or not the conduct of the business as outlined above, comes within the purview of this Statute."

On February 26, 1947, we requested that you furnish this office with additional facts, which you did by letter dated March 1, 1947, from which we quote:

"1.   The Blue Bonnet Stamp Company keeps
at its location in Fort Worth, the merchandise
with which to redeeem the stamps, and also has
other redemption stations in other cities  in
Texas.  The only way this Company puts out mer-
chandise is by redeeming stamps that have been
given away by the merchants.

"2.   The holder of these stamps cannot re-
ceive merchandise from the merchant who gives
the stamps.  They must present the stamps  to
one of the redemption stations.

"3.   The merchandise of the Company is
displayed at the redemption stations, and each
article has a value which is known by the Com-
pany as 'book value'.  The merchandise runs
from one 'book value', and up.  Any person may
appear in person at the redemption stations and
select and receive at that time, any article
that the Company has, provided they have a suf-
ficient number of books.  Deliveries of merchan-
dise are also made by this Company by mail.  Un-
der this system, the customer selects the desired
article, orders by number from a pamphlet put out
by the Blue Bonnet Company, and mails the required
number of books containing stamps to the Company.
The Company, in turn, will mail this particular
item to the individual, which closes the trans-
action, unless the item is damaged in shipping.
If so, the Company will make it good.

The Texas Chain Store Tax Statute (Chap. 400, page
1589, Acts 1st C.S. 44th Leg.) is codified as Art. 1111d, Ver-
non's Annotated Penal Code of Texas.  The parts of the Act with
which we are concerned provide as follows:

"Sec. 1.   That from and after the passage
of this Act it shall be unlawful for any person,
agent, receiver, trustee, firm, corporation, as-
sociation or copartnership, either foreign or
domestic to operate, maintain, open or establish
any store or mercantile establishment in this
State without first having obtained a license so
to do from the Comptroller of Public Accounts
as hereinafter provided.

".  .  .  .  .  .  .

"Sec. 6.   The provisions of this Act shall

be construed to apply to every person, agent,
receiver, trustee, firm, corporation, copartner-
ship or association, either domestic or foreign,
which is controlled or held with others by major-
ity stock ownership or ultimately controlled or
directed by one management or association of
ultimate management.

"Sec. 7.  The term 'store' as used in this
Act shall be construed to mean and include any
store or stores or any mercantile establishment
or establishments not specifically exempted with-
in this Act which are owned, operated, maintained,
or controlled by the same person, agent, receiver,
trustee, firm, corporation, copartnership or as-
sociation, either domestic or foreign, in which
goods, wares, or merchandise of any kind are sold,
at retail or wholesale.

"Sec. 8.  Any person who, either for him-
self or as the agent of any person, receiver
trustee, firm, corporation, copartnership or as-
sociation, shall operate or maintain any store
or stores or mercantile establishment or mercan-
tile establishments as defined in this Act with-
out having displayed in a conspicuous place in
such store or mercantile establishment the lic-
ense fee receipt for the current year as re-
quired in this Act shall be guilty of a misde-
meanor and upon conviction thereof shall be fined
in any sum not less than Twenty-five Dollars ($25);
nor more than One Hundred Dollars ($100), and each
day of such violation shall constitute a separate
and distinct offense."

Under the facts you outlined, it will be necessary
for us to determine whether or not the Bluebonnet Discount Stamp
Company is a "store" or "mercantile establishment", as defined
in Sec. 7 of the Act quoted above.

In the  case of Hurt, et al, vs. Cooper, et al, decided
by our Supreme Court on December 1, 1937, reported in 110 S.W.
(2d) 896, 130 Tex. 433, Judge Hickman, Commissioner, in speaking
of "store" said:

"The statute having defined the word, we
are not concerned with its usual meaning.  Un-
der that definition, a mercantile establishment,
at which goods, wares, or merchandise of any kind,
except those exempted, are sold is a store and is

taxable as such, and this even though it may
also be a distributing point . . . . conversely,
a mercantile establishment at which no sales are
made is not a store, and therefore not taxable.
The test is whether sales of goods, wares, or
merchandise are made at the place . . . ."

In Continental Paper Bag Company, et al, vs. Bos-
worth, Com. App., Sec. B, 276 S.W. 170, Justice Short said:

"In American usage, the word 'store'
when employed to designate a place of business,
is a broad one. It signifies not merely a
warehouse, or storeroom, but may include in
its meaning a business establishment where
personalty is kept and sold, and incidentally
gotten in salable condition."

In Veasey Drug Company, et al, vs. Bruza, et al, 37
Pacific Reporter, 2d, 294, the Court said:

"  . . . . . . .

"The claimant presents no authority defin-
ing the specified term 'wholesale mercantile
establishment' as used in our statute, and we
have found none, however, when the separate
words composing that expression are considered
in their usual, ordinary and natural use and
meaning, no difficulty is encountered in arriv-
ing at the meaning of the statutory term. Thus
from all of the definitions the word 'establish-
ment' means an institution, place, building, or
location. Its meaning, of course, may vary and
does vary with the use of the word. The word
'mercantile' in its ordinary acceptance means
pertaining to the business of merchants, and is
concerned with trade or buying and selling of
merchandise. People vs. Federal Security Com-
pany, 255 Ill. 561, 99 N.E. 668, 88, H. H.
Kohlsaat and Company vs. O'Connell, 255 Ill.
271, 99 N. E. 689. In Carr vs. Riley, 198
Mass. 70, 84 N. E. 426, 428, 'mercantile' is
defined thus: 'Of or pertaining to merchants or
the traffic carried on by merchants; having to
do with trade or commerce, trading, commercial'.
Thus while the word 'establishment' may mean
almost any kind or character of institution,
location, building, or place, yet its meaning
is greatly restricted when used following the

word 'mercantile'. And the expression 'mercantile establishment' must mean and refer to an institution of mercantile business, or place, building, or location where the mercantile business or the buying or selling of merchandise is conducted or engaged in. One mercantile business or establishment may differ from another just as one merchant may differ from another merchant as to the character of business engaged in. So we have retail merchants or retail mercantile establishments on the one hand, and wholesale merchants or wholesale mercantile establishments on the other hand.

"A mercantile establishment is a place where the buying and selling of articles of merchandise is conducted. Hotchkiss vs. District of Columbia, 44 App. D.C. 73.

"The term 'mercantile business' is defined to mean 'the buying and selling' of articles of merchandise as an employment' in Grayham v. Hendricks, 22 L. Ann. 523."

In your related facts, the subject company redeems the book or books of stamps in merchandise; consequently, it is not necessary for us to define goods, wares or merchandise as set forth in the statute.

We come now to the word "sale." In 37 Tex. Juris., page 69, under Sec. 2 of the subject "sales' the following definition is given:

"A 'sale' may be defined as a transfer of personal property from one person to another for a price in money or for property of an agreed money value. The Uniform Sales Act defines 'a sale of goods' as 'an agreement whereby the seller transfers the property in goods to the buyer for a consideration called the price.' The definition implies that there must be not only an 'agreement', but also a present 'transfer' of property, or 'passage of title', from seller to buyer, either absolutely or conditionally, (but not necessarily a delivery), and the payment of a price, or a promise - given or implied - to pay."

In Johnson vs. State, Tex. Ct. Crim. App., 55 S. W. 968, decided February 21, 1900, Brooks, Judge said:

"The Court defined a sale as follows:
'In law, a sale is the agreed transfer of prop-
erty having some other value to another for a
valuable consideration.  A sale may be shown by
facts and circumstances, as well as by direct
proof.  The valuable consideration above men-
tioned may not be in money, but may be any article
of value.'  We think this definition is correct."

In L. H. Woods and Company vs. Half, Weiss Company,
44 Texas, 633, the Court said:

"A sale imports and necessarily carries with
it a chnge of ownership, (Pars. Merc. Law, 46)

"  .  .  .  .  Whatever rule be adopted, it may
be sometimes difficult to apply it, but we can-
not doubt that the true principle is this: every
sale transfers the property, and that is not a
sale which does not transfer the property in the
thing sold; but this property cannot pass, and
therefore the thing is not sold unless, first, it
is completed and wholly finished, so as to be
in fact and in reality the thing purporting to
be sold; and in the second place, it must be so
distinguished and discriminated from all other
things that it is certain, or can be made cer-
tain, what is the specific thing the property in
which is changed by the sale.  If the transaction
be deficient in either of these points, it is not
a sale, although it may be a valid contract for
a future sale of certain articles when they shall
be completed, or when separated from others."

In Gay vs. Hardeman, 31 Tex. 245, the Court said:

"What constitutes an actual sale of per-
sonal property?  It is an agreement between the
seller and the buyer upon the consideration or
price, either in cash or upon a stipulated credit,
and a delivery of the property.  When so delivered,
the sale is consummated and the right of property
becomes absolute in the buyer, and the seller has
no longer any more control over it than the rest
of mankind.  But it is pretended that at the time
of the sale a lien was reserved or retained by
the seller.  This was impossible by the common law
in regard to personal property, because an actual
or constructive delivery was necessary to effectu-
ate a sale of personal property.  And when this

delivery took place the right of property was absolute in the buyer, and subject to any future alienations he might choose to make of it."

With reference to the definition of "retail" and "wholesale", Holmes, Circuit Judge, in White Motor Company vs. Littleton, et al, C. C. A., 5th Circuit, decided December 12, 1941, 124 Fed. (2d) 92, in speaking of the Fair Labor Standards Act, said:

"The word 'retail' is not defined by the Act. Given its common and ordinary acceptation when used in sales parlance, it means a sale in small quantity or direct to the consumer, as distinguished from the word 'wholesale', meaning a sale in large quantity to one who intends to resell. The character of the sale is not altered by the use to which the consumer may put the purchased commodity. These sales were preponderantly retail although the products sold were used subsequently for commercial purposes."

In Veazey Drug Company, et al, vs. Brunza, et al, supra, the following was said:

"The term 'wholesale' or the selling in or by unbroken parcels is distinguished from 'retail' or dividing into smaller quantities and selling direct to consumers" in Gorsuth v. Butterfield, 2 Wis. 237, and also in Kentucky Consumers Oil Company vs. Commonwealth, 192 Ky. 437, 233 S.W. 892, and in Great Atlantic & Pacific Tea Company vs. Cream of Wheat Co., (C.C.A.)  227 F. 46.

"A wholesale dealer is one whose business is the selling of goods in gross to retail dealers, and not by the small quantity or parcel to consumers thereof."  State vs. Lowenhaught, 79 Tenn. (11 Lea) 13;  Webb v. State, 79 Tenn. (11 Lea) 662.

In Sperry & Hutchinson Co. vs. Mechanics' Clothing Co., 135 Fed. Rep. 833, the Court said:

"Upon consideration of the allegations of the bill as to the nature of the trading stamps, it is apparent that the only purpose for which they are issued to collectors is for redemption; that the only promise made by the

Sperry & Hutchinson Company to the public in relation to these stamps is that it will redeem them if procured from authorized merchants; and that the collector acquired only such rights as are expressly or by fair implication promised him by the company.

"A trading stamp is not ordinary property. It is sui generis.  It represents a somewhat complicated transaction, and, from its nature, I think there are necessary limitations upon the modes in which it may be transferred . . .  By contract between the complainant and the merchant, the title to the stamp does not vest in the merchant who issues it but remains in the company until it has been issued in regular course to a customer of the merchant.  The customer is expressly offered only the right to redeem the stamp, and impliedly the right to transfer it for redemption.  A stamp is not merely a token of the company's obligation to redeem it, and of the right of the holder to redemption, but it is also a token or an instrument of another transaction in which the trading stamp company has an interest, and from which it derives its entire profit and its recompense for its outlay in establishing the business . . . . . . .

"The trading stamp, when issued, represents a closed transaction between the merchant and the company, as well as an outstanding obligation to redeem the stamp.  As a token or voucher of the sale and use of so much advertising, the trading stamp is necessarily a consumable article - an article designed for a single use in an advertiseing scheme. . . . .

"THe trading stamp is an artificial creation.  The company, having created it and having created a value for it, may dispose of it on such terms as it sees fit.  It may in the first instance restrict the right to issue it for advertising purposes to such persons as it may select, and to such persons as are willing to pay for it.  The public is entitled to receive it upon the terms offered, namely, that it is exchangeable for goods.  But, it is asked, why, if the right of a customer to transfer it is conceded, may he not transfer it in any mode he pleases, and give it as an advertisement if he sees fit?

A sensible answer to this question, I think, is
this:  Because he thereby appropriates to him-
self the trading stamp company's legitimate share
of the transaction.  In the trading stamp scheme
or plan, as explained in the books, there are
designed to be three parties - the customer, the
merchant, and the trading stamp company.  The
customer is to acquire, at his benefit, a redeema-
ble stamp; the merchant is to acquire, as his
benefit, a trade advantage resulting from issuing
the stamps at his shop; the trading stamp com-
pany's benefit is the money paid to it by mer-
chants for the privilege of issuing the stamps
. . . . . . . .

"While a transfer of ordinary property by
the owner upon any terms usually deprives other
persons of no rights, this is not always the
case with the trading stamp.  While it may be
transferred in any way which confines its use
within the purpose for which it was issued, it
may not be transferred in such a way as to de-
stroy its value as an instrument of special trade
advantage  or advertising company, or adver-
tising, or as to deprive the company which
created the value of the stamp, and which has
assumed the obligation to redeem it, of its right
to compensation for expenditures and for redeem-
ing the stamp."

In Sperry & Hutchinson Co. vs. Fenster, et al, District
Court, Eastern District, New York, decided January 16, 1915, 219,
Fed. Rep. 755, the Court said:

"The right to redeem the stamps is a
property right transferable by possession while
the license to use them for advertising purposes
is not transferable without compensation to the
person granting that right, viz: the plaintiff
herein."

In 10 Tex. Juris. p. 111, Sec. 64, consideration is
defined as follows:

"A consideration may be defined to be
something which is given in exchange, something
which is mutual, or something which is the in-
ducement to the contract.  It must be a thing
which is lawful and competent in value.  It is
that which induces the promise or the price paid
for the promisor's undertaking."

In 10 Tex. Juris., page 122, Sec. 71, appears the following:

"A valuable consideration may be either a benefit to the promisor or a detriment to the promissee, - or stated in another way, it may consist of some right, interest, profit, or benefit accruing to one party, or some forebearance, loss or responsibility given, suffered or undertaken by the other. Again, to constitute a consideration, either some benefit must flow to, or some injury must be received by, one or the other of the parties."

In the light of the decisions and laws set forth above, and inasmuch as a transfer of merchandise for a valuable consideration (the right to redeem the stamps for merchandise) occurs, it is our opinion that the trading stamp company you named comes within the definition of "store" or "mercantile establishment" at which goods, wares or merchandise of any kind are sold, at retail or wholesale, and is, therefore, subject to the provisions of Article 1111d, Penal Code of Texas.

### SUMMARY

A trading stamp company which redeems trading stamps, with merchandise it keeps in stock for that purpose, is a "store" or "mercantile establishment" within the meaning of Article 1111d, Vernon's Penal Code, and is subject to the provisions of that Article.

Very truly yours,

ATTORNEY GENERAL OF TEXAS

By s/J. A. Amis, Jr.
   J. A. Amis, Jr.
   Assistant

JAA:rt:mj:wc

APPROVED MAR. 7, 1947
s/Price Daniel
ATTORNEY GENERAL

APPROVED OPINION COMMITTEE BY BWB, CHAIRMAN